218 N.J. Super. 478 (1987)
528 A.2d 56
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RADAMES PEREZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 26, 1987.
Decided June 30, 1987.
*480 Before Judges R.S. COHEN and GRUCCIO.
Alfred A. Slocum, Public Defender, attorney for appellant (James Mayer, Designated Counsel, of counsel and on the letter brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Catherine A. Foddai, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by: GRUCCIO, J.A.D.
Following a jury trial, defendant Radames Perez was convicted of possession of a controlled dangerous substance, cocaine, with the intent to distribute, N.J.S.A. 24:21-19a(1) and N.J.S.A. 24:21-19b(2). He was sentenced to five years imprisonment and ordered to pay $25 to the Violent Crimes Compensation Board.
On appeal defendant contends:
1. The trial court erred in permitting an expert opinion of intention to distribute. (Not raised below).
2. The trial court erred in denying defendant's motion for a mistrial at the end of the State's case.

*481 3. The trial court erred in permitting the State to switch expert witnesses on the day of trial.
The State's evidence reveals that on March 7, 1985, at approximately 1:07 a.m., while New Jersey State Troopers Stephen Serrao and Paul Morris were on routine patrol at the northern end of the New Jersey Turnpike in Ridgefield Park Borough, they noticed a white Econoline van travelling at a high rate of speed. The troopers followed the van, conducted a speed check of the vehicle and determined it was travelling at 65 mph. As Serrao activated the patrol car's overhead lights, the van immediately pulled over to the shoulder and stopped. Serrao exited the patrol car and approached the van from the passenger side; Morris remained toward the rear of the van. Defendant, seated in the passenger side, opened the front door. At this point, the vehicles were parked in a well-lit stretch of the turnpike and Serrao carried a flashlight. Serrao walked up to the open door and asked the driver, Nester Marrero, for his license, vehicle registration and insurance card. Marrero responded in a thick Spanish accent, "No speak English"; Serrao, who spoke some Spanish, attempted to convey the request in a mixture of Spanish and English.
While speaking to Marrero, Serrao saw defendant put his hands in his jacket pockets. When defendant removed his left hand from his jacket, it contained an object which he threw into the rear of the van with an underhand, backhand toss. Serrao was standing inches away from defendant when this occurred and, as soon as he saw defendant throw the object in the rear of the van, he told Marrero to place his hands on the steering wheel and ordered both men from the van.
After exiting the van, they were frisked but no weapons were found. Serrao looked into the rear of the van and recovered a brown paper bag which contained a clear plastic bag with a baseball-size piece of a white substance. Serrao believed the substance to be cocaine. Defendant and Marrero were arrested, handcuffed and given their Miranda warnings. A further search of the van uncovered no other contraband.
*482 After being transported to the Newark barracks for processing, a more thorough search of both men was conducted; $700 in cash was found in Marrero's wallet. Marrero's driver's license, registration card and insurance card identifying him as the owner of the van were also found in Marrero's possession. Laboratory analysis of the white powder determined the substance to be 4.4 ounces of cocaine, 56% pure and 70 grams of which were freebase.
The State's expert witness, Investigator Frank Kelaher, testified that the cocaine had a street value of $8,000 to $10,000, which, after being diluted and weighed into small quantities, could generate a profit in excess of $35,000. Kelaher also testified that in his opinion the cocaine was possessed with the intention to distribute.
Defendant testified on his own behalf and denied having possession or knowledge of the cocaine. He said Marrero asked him to go for a drive since he was injured and was unable to work. He claimed the injury sustained approximately 10 days earlier made it impossible for him to move his left hand and that he put his right hand into his jacket pocket to retrieve his identification papers. He denied throwing the paper bag into the rear of the van.
Defendant first contends that the trial court erred in allowing Kelaher to testify as an expert witness on the subject of defendant's intent to distribute the cocaine. On direct examination, Kelaher was asked, without objection, the following hypothetical question:
Assume that the date is March 7th, 1985. The time is approximately 1:07 a.m. A white van is on the New Jersey Turnpike travelling southbound. This van is stopped for speeding. When a trooper approaches the vehicle, the passenger opens the door. The driver is asked for his credentials. As the trooper is having some problems conversing with the driver, he sees the passenger take his hands from his lap, put them in his pockets and toss an item to the back of the van. The item is eventually retrieved and it is found to contain 124.6 grams of cocaine of which 56 per cent is pure, or of the total volume, 70 per cent [sic] is pure freebase.
Sir, based on those facts, would you have an opinion as to whether or not the item was possessed for personal use or for possession with intent to distribute?

*483 And, I want to add one additional fact: That the substance found is in a brick form. It's in a hard substance form.
Kelaher asked to examine the cocaine and, after doing so, answered:
Based on my training, education and experience, it is my opinion that this cocaine is in this particular case was possessed with the intent to distribute, and I base that opinion on the quantity of the cocaine, being 4.2 [sic] ounces, and the quality of the cocaine being 56 per cent pure, which is above average high quality cocaine. The average street level quality cocaine is between 10 and 30 per cent pure.
So based on the quantity being 4.2 [sic] ounces, and the quality, 56 per cent pure, it is my opinion that this cocaine was possessed with the intent to distribute.
Although defendant raised no objection at the time this answer was given, he now alleges plain error contending the answer amounted to an opinion that defendant was guilty.
Evid.R. 56(2) permits an expert to testify "as to matters requiring scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue." See State v. Kelly, 97 N.J. 178, 208 (1984). Furthermore it is well-established that the qualifications of experts are left to the discretion of the trial court, and its decision is conclusive unless clearly shown to be erroneous. State v. Campisi, 42 N.J. Super. 138, 147 (App. Div. 1956). See also State v. Ravenell, 43 N.J. 171, 182 (1964); State v. Griffin, 120 N.J. Super. 13, 20 (App.Div. 1972). Indeed, expert opinion testimony is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of fact. Evid.R. 56(3); State v. Boiardo, 111 N.J. Super. 219, 238 (App.Div. 1970). See also State v. Louf, 126 N.J. Super. 321, 344 (App.Div. 1973), aff'd in part, rev'd in part, 64 N.J. 172 (1973); Shutka v. Pennsylvania R.R. Co., 74 N.J. Super. 381 (App.Div. 1962), certif. den., 38 N.J. 183 (1962). Unquestionably, "an expert cannot give an opinion without considering all the data, facts and circumstances pertinent to the inquiry being made." Boiardo, supra, 111 N.J. Super. at 238, quoting Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 144-145 (1950).
*484 There is no New Jersey opinion which discusses the exact subject matter at issue here; namely, that an expert witness may testify concerning the processing and packaging of narcotics and, further testified that a defendant possessed such controlled dangerous substance with the intent to distribute. In looking to other jurisdictions for guidance, however, we find several cases directly on point. See, e.g., State v. Montana, 421 So.2d 895 (La. 1982); State v. Keener, 110 Ariz. 462, 520 P.2d 510 (1974) (en banc); State v. Avila, 166 Conn. 569, 353 A.2d 776, 780-781 (1974); State v. Grayton, 163 Conn. 104, 302 A.2d 246, 250 (1972), cert. den., 409 U.S. 1045, 93 S.Ct. 542, 34 L.Ed.2d 495 (1972); State v. Olsen, 315 N.W.2d 1, 6-7 (Iowa 1982); Cmwlth. v. Nichols, 4 Mass. App. 606, 356 N.E.2d 464, 468-469 (1976).
In Keener, supra, a police officer with six years' experience in narcotics investigation was allowed to testify that the quantity of drugs defendant possessed indicated they were possessed for sale rather than personal use. Id. at 514. On appeal, defendant argued that this testimony amounted to a statement of belief in defendant's guilt. Id. at 513. In rejecting this claim, the Arizona Supreme Court reasoned that since the police officer was properly qualified as an expert and his testimony was subject to cross-examination, there was no abuse of discretion in permitting the police officer to state his opinion even though it may have involved the ultimate fact to be determined by the trier of fact. Id. at 514. See also State v. Arce, 107 Ariz. 156, 483 P.2d 1395 (1971); State v. Moreno, 26 Ariz. App. 178, 547 P.2d 30, 36 (1976).
Likewise, in Avila, supra, 353 A.2d at 776, minutes before being apprehended at a railroad station, police saw defendant toss a brown bag he was carrying over a fence. Id. at 778. At trial, the chief toxologist for the state department of health was allowed to testify that a package found inside the bag when retrieved contained 112 grams of 85% pure heroin. Id. at 780. He further testified that the usual concentration of pure heroin sold to users was between 3% and 4%, and that the total *485 amount of powder usually found in a single glassine bag was about one-tenth of a gram. Ibid. He then stated that the package of heroin he examined could be cut with other substances to yield an amount which would fill 22,400 glassine bags of the type of heroin usually sold on the street. Ibid.
Defendant objected to this testimony and on appeal argued that during cross-examination the expert testified that he had no way of knowing exactly what was going to be done with the particular powder he analyzed. Ibid. The Connecticut Supreme Court rejected defendant's argument and opined that the expert did not state he knew defendant's plans for the package of narcotics; rather, the expert testimony was that "from his past experience in analyzing packages of heroin sold in the streets and in his opinion as an expert witness" the package involved "could have" filled 22,400 glassine bags. Id. at 780-781. Indeed, the court pointed out that "it cannot be assumed that these facts were common knowledge"; thus, the testimony was properly admitted to aid the jury in its determinations of the questions in issue. Id. at 781.
Here the record clearly reveals that Kelaher merely testified as to the quantity and quality of the cocaine and that in his opinion the amount and type of cocaine was intended for distribution. Indeed, the record demonstrates that Kelaher's expertise to offer such an opinion is unchallenged and nowhere do we find the record to indicate that Kelaher stated defendant was guilty of the charges against him. Thus, our careful consideration of this issue leads us to conclude that it is unreasonable to assume that the average lay person called to serve as a juror would necessarily know what a person who possessed 4.4 ounces of 56% pure cocaine was going to do with it. Accordingly, we conclude that Kelaher's testimony was properly admitted to aid the jury in determining the questions in issue. See State v. Cavallo, 88 N.J. 508, 517 (1982); Moreno, supra, 547 P.2d at 36; Avila, supra, 353 A.2d at 781. See also 31 Am.Jur.2d, Expert and Opinion Evidence, § 180, p. 742. *486 It is now well-settled that expert testimony is to be weighed and judged like any other testimony, State v. Wesler, 137 N.J.L. 311 (Sup.Ct. 1948), aff'd, 1 N.J. 58 (1948). Indeed, the jury was free to disregard Kelaher's opinion. See State Highway Com. v. Dover, 109 N.J.L. 303, 307 (E. & A. 1932); Middlesex v. Clearwater Village, Inc., 163 N.J. Super. 166, 174 (App.Div. 1978); Shulton, Inc. v. Clifton, 7 N.J. Tax 220, 223 (1984).
Defendant next contends that the trial court committed reversible error when it denied his motion for a mistrial at the close of the State's case and subsequent to the directed verdict for acquittal against Marrero. Defendant argues that the opening statement made to the jury by Marrero's attorney was prejudicial to him and affected his right to a fair trial. We first observe that motions for mistrial are directed to the sound discretion of the trial judge, and will not be upset absent showing of a mistake or arbitrary exercise of that discretion which results in manifest injustice. State v. Abernathy, 137 N.J. Super. 83, 86 (App.Div. 1975). See also State v. Winter, 96 N.J. 640, 646-647 (1984); State v. Witte, 13 N.J. 598, 611 (1953); State v. Thomas, 76 N.J. 344, 362 (1978); State v. DiRienzo, 53 N.J. 360, 383 (1969). Likewise, when weighing the effectiveness of curative instructions, an appellate court will give equal deference to the determination of the trial court. Winter, supra, 96 N.J. at 647. Whether or not a curative instruction is adequate, "focuses on the capacity of the offending evidence to lead to a verdict that could not otherwise be justly reached." Ibid. See also State v. Macon, 57 N.J. 325, 335 (1971).
Our review of the record does not reveal an abuse of discretion in denying a mistrial. Prior to taking evidence and opening statements, the trial court made the following statement to the jury:

[W]ith respect to the opening statements and any other statements, questions or comments by the attorneys throughout the case, it's important for you to remember that any such statements are not evidence in this case. ... [Y]ou're going to be asked to decide this case on the basis of the evidence, and the evidence is going to come to you either by testimony of witnesses or *487 they're going to come up here in the witness box, be placed under oath and will probably be examined an cross-examined as well, and the only other evidence will be things, papers, documents, things that you can touch will be marked in evidence. That will be the evidence in the case. [Emphasis added].
In addition, the trial court forcefully told the jury on two other occasions to disregard remarks made in the opening statements. These instructions were given at the end of the State's case after the court granted Marrero's motion for acquittal and again in its final instruction to the jury at the conclusion of the case.
Reviewing courts must rely upon the "jurors' ability and willingness to follow the limited instruction without cavil or question." State v. Manley, 54 N.J. 259, 270 (1969). We find no reason here to doubt that the jury faithfully followed the instructions of the trial court to disregard the opening statement of Marrero's attorney in rendering its verdict.
As to defendant's third point, we find his contention to be without merit. R. 2:11-3(e)(2).
In sum, we are satisfied that defendant received a fair trial. He is entitled to no more and received no less.
Affirmed.