222 N.J. Super. 583 (1988)
537 A.2d 764
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BRUCE BINNS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 25, 1988.
Decided February 18, 1988.
*585 Before Judges DREIER and BAIME.
Alan Dexter Bowman, attorney for appellant (Alan Dexter Bowman and Raymond A. Brown, of counsel, Lorane L. Posner, on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Richard H. Morton, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from a conviction of possession of cocaine with intent to distribute, N.J.S.A. 24:21-19a(1) and b(2). He was sentenced to a term of six years with a two-year period of parole ineligibility, a $2500 fine and a $25 Violent Crime Compensation Board penalty.
*586 Defendant, who resides in Miami, and codefendant Grant, who resides in New York City, were acquaintances. The facts alleged by defendant came primarily from Grant's testimony since defendant only testified at the suppression hearing and not at trial. These facts stand unimpeached by any proof offered by the State. On June 16, 1985 the men both attended a graduation party which was given by a successful Jamaican businessman for his daughter in Washington, D.C. At the party, Pauline Barnes, a friend of codefendant,[1] asked codefendant if he would drive her car back to New York City for her. Codefendant did not possess a driver's license, so defendant agreed to drive the car back to New York.
On June 17, 1985 the two men drove north, stopping at a service area in Camden to eat. A New Jersey State Trooper pulled defendants over because their car, which had New York license plates, had a cracked left tail light. Defendant produced a Florida driver's license, and codefendant reached into the glove compartment and handed the officer the rental agreement. The rental agreement listed Pauline Barnes as the lessee, and it stipulated that the car was not to be removed from New York although written in ink on the agreement was "New Jersey o.k."
The officer then asked codefendant to step outside the car, and the officer conducted a pat-down. When asked where they were coming from, codefendant, who had been asleep in the car and had been awakened by the stop, answered that they were coming from Camden. The officer became suspicious, however, because the toll ticket indicated that the car had entered New Jersey at the Delaware Memorial Bridge. Defendant was then asked to exit the car, and he was also patted down. When asked where they were coming from, defendant answered that they were coming from Washington, D.C.
*587 The officer asked defendant if he could search the car, and defendant responded in the affirmative. The officer filled out a consent to search form, and defendant signed it. Nothing was found in the interior of the car, but when the officer and another trooper, who had arrived to assist, opened the trunk they observed a "Yonkers Raceway" bag which contained a gram scale and a box of baking soda. The officers continued to search and in the spare tire cavity, underneath carpeting, they discovered a cracker box which contained a clear plastic bag filled with a white powder substance, determined by the State Police lab to be 62.96 grams of cocaine, 22.91 grams of which were free base. The officer issued a summons for the cracked tail light and placed the defendants under arrest for possession of cocaine.
At trial the State's expert witness testified that, based upon the quantity and the purity level of the cocaine, his opinion was that the cocaine was possessed with the intent to distribute it for profit. Codefendant testified that he never had access to the keys, that neither he nor defendant ever went into the trunk, and that codefendant had no knowledge that any cocaine was in the trunk. Neither defendant has any previous record.[2] The jury found defendant and codefendant guilty of both possession *588 and possession with intent to distribute. The counts, however, were merged for the conviction noted earlier.
On appeal defendant raises five points:
POINT I
The search of the automobile was the product of an illegal arrest and therefore was not the result of voluntary consent. Accordingly, the motion to suppress was erroneously denied.
POINT II
The State did not adduce sufficient evidence of possession to underpin the convictions. Accordingly, the trial court erred in denying appellant's motion for a judgment of acquittal.
POINT III
The expert testimony admitted by the trial court denied appellant a fair trial.
POINT IV
The court improperly admitted fungible evidence without proper identification or chain of custody.
POINT V
The sentence imposed herein is unduly punitive and manifestly excessive.

I
Defendant initially contends that the cocaine and the distribution paraphernalia recovered from the trunk of the rental vehicle were erroneously admitted into evidence because their seizure was the fruit of both an illegal arrest and of an unlawful search. Defendant admits that the vehicle was properly stopped and defendant was lawfully patted down for weapons. Furthermore, detaining defendant while the troopers searched the trunk of the car pursuant to defendant's consent is more analogous to a Terry stop than to a formal arrest, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See Berkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984); State v. Davis, 104 N.J. 490, 504-505 (1986). Thus, defendant was not arrested but merely detained pursuant to the appropriate investigation under the circumstances.[3]
*589 Defendant also contends that even though he signed the consent form, he did not knowingly consent to the search, rendering the search unlawful. Contrary to his earlier concession that he was formally arrested after the search, defendant argues that "the consent form was signed under duress following his arrest, and with no knowledge of his right to refuse consent." At the suppression hearing, the trial judge found:
There hasn't even been an allegation of threat or coercion. There was nothing in the surrounding circumstances which would have compelled this driver to sign this form against his will and, therefore, I find that it was a voluntarily, knowingly and intelligently written consent to search the motor vehicle....[4]
If the State relies on consent as the basis for a search, it must demonstrate "knowledge on the part of the person involved that he had a choice in the matter." State v. Johnson, 68 N.J. 349, 354 (1975). The trooper testified that he informed defendant of his right to refuse a search of the vehicle. The form also contains this information. Defendant, who testified that he could read and that he attended junior college, signed the form. Defendant's theory on appeal is that "the arrest or appellant's perception of the fact of the arrest rendered nugatory any verbiage uttered by the trooper that he had the right to refuse consent." Defendant was not under arrest, and if defendant's assertion were held valid, then every appellant's subjective perception could render nugatory an otherwise valid consent. Furthermore, defendant also testified on direct examination that by signing the form he intended to give the officer permission to search the car. See also State v. Santana, 215 N.J. Super. 63, 71 (App.Div. 1987) (where this court noted that because defendant had permission from the owner of the car to *590 drive the vehicle, he could also consent to a search of the vehicle). We therefore sustain the trial court's finding, based on substantial credible evidence in the record, that defendant knowingly and voluntarily consented to a search of the vehicle. State v. Johnson, 42 N.J. 146, 162 (1964).

II
Defendant next contends that there was insufficient proof that he knowingly possessed the cocaine. The State submits that there was substantial circumstantial or inferential proof of a nexus between defendant and the cocaine discovered in the vehicle that he was operating. State v. Brown, 80 N.J. 587, 591 (1979); State v. Reyes, 50 N.J. 454, 458-459 (1967); see also R. 3:18-1.
Briefly stated, the State's evidence is that defendant was the sole operator of the vehicle from Washington, D.C. until the car was stopped by the trooper. Defendant alone possessed the keys to the trunk. Defendant possessed a Florida driver's license. The distribution paraphernalia was in plain view in the trunk. And codefendant attempted to mislead the police regarding the origination point of their trip, which was outside of the permissible area of operation of the rental vehicle. Also, the fact that defendant does not own the vehicle is not necessarily relevant to the issue of possession of the cocaine. In State v. Brown, supra, the Court stated:
Ownership in conjuction with possession is not a required element of the possessory crime; one can knowingly control something without owning it and be guilty of unlawful possession. Hence, the ownership of the heroin by another would not become relevant unless totally inconsistent and incompatible with the defendant's possession of it, in the sense that the ownership in another would exclude or displace defendant's capacity to control the drugs. [80 N.J. at 598].
This is not the classic constructive possession case usually presented against a passenger. But for the strong link between codefendant Grant and the lessee of the car, the codefendant passenger might possibly have argued that he lacked constructive possession of the cocaine under the line of cases *591 argued by defendant. But see State v. Palacio, 205 N.J. Super. 256 (App.Div. 1985); State v. Shipp, 216 N.J. Super. 662, 666-667 (App.Div. 1987). Defendant, however, through possession of the trunk key and by having control of the car, was in actual possession; if he wanted to rebut the natural inference of knowing possession, he might either have testified[5] or offered other proof to negate his knowledge of or connection with the cocaine or paraphernalia in the trunk.
In short, giving the State the benefit of all favorable testimony and reasonable inferences, the State presented sufficient evidence for a jury to convict defendant of knowing possession and of possession with intent to distribute that cocaine. See generally State v. Meneses, 219 N.J. Super. 483, 486-487 (App.Div. 1987).
We understand that the ramifications of our conclusions include the specter of an arrest, conviction and jail term following the discovery of narcotics in the trunk of a borrowed vehicle. It is possible that defendant may have been an unwitting "mule" or courier, with codefendant sent along to insure that defendant did not open the trunk. Although one might expect that a courier with knowledge of his cargo would have refused to sign the consent form, see State v. Santana, supra, (where a defendant consented to a search and the police found two kilograms of cocaine behind door panels). If defendant had been duped into driving, the later exercise of his right not to testify did not aid the jury in dispelling the contrary inferences which were resolved against him.[6] If the facts here cannot *592 legally support a conviction, the police and society would be powerless to stop those physically engaged in the interstate transportation of drugs. All drugs would hereafter be transported in "borrowed" rental cars.

III
Defendant urges that the testimony of the State's narcotics expert in regard to the weight and purity of the cocaine was improperly admitted and was cumulative and inflammatory, because, according to defendant, N.J.S.A. 24:21-19a(1) requires the jury "to presume delivery from the quantity alone, absent expert testimony by the defense that such a quantity was possessed for a purpose other than distribution." Defendant proffers no support for this statutory interpretation, and we reject it.
Defendant next argues that the evidence was improperly admitted because the State offered the opinion testimony as a substitute for "evidence of knowledge and intent to exercise dominion and control." One of the issues before the jury, however, was whether defendant possessed the cocaine with the intent to distribute it. As part of its case, the State introduced an expert witness who testified that the New Jersey Turnpike is a corridor for the transportation of narcotics, that the cocaine seized from the trunk of the vehicle had an uncut street value of $2,500 to $3,000 an ounce, and that the profit to be generated from that cocaine when cut would be approximately $6,000. The expert testified that
[t]wo people found in possession of approximately two and-a-half ounces of cocaine at the purity level of 36  approximately 36 percent, based on an economic factor it would be my opinion based on my knowledge and training that they possessed that cocaine with the intent to redistribute it for profit.
*593 In addition, the expert stated that the baking soda and gram scale confiscated in the search are associated with the distribution of cocaine.
In State v. Perez, 218 N.J. Super. 478 (App.Div. 1987), this court confronted the identical issue raised by defendant. The court noted that expert opinion testimony that embraces the ultimate issue to be decided by the trier of fact is not objectionable. Id. at 483; Evid.R. 56(3). The court further held that an expert's testimony about the quantity and quality of the cocaine and about his opinion that the amount and type of cocaine is indicative of an intent to distribute is admissible to aid the jury. Id. at 483; Evid.R. 56(2). The expert's testimony was properly admitted under Evid.R. 56(2) because it assisted "the trier of fact to understand the evidence or determine a fact in issue."

IV
The arresting officer failed to initial the gram scale and the box of baking soda that was found in the green Yonkers Raceway bag and the cracker box which held the cocaine. The trial judge admitted the evidence despite defendant's objections that the State had insufficiently established chain of custody of the items.
The standard to be applied for the admission of real evidence that has been improperly marked is whether the State has shown a reasonable probability that no tampering with the evidence has occurred. State v. Brown, 99 N.J. Super. 22, 28 (App.Div.), certif. den. 51 N.J. 468 (1968). While an uninterrupted chain of possession must be shown,
it is not necessary for the party introducing such evidence to negate every possibility of substitution or change in condition between the event and the time of trial, especially where as here, the custodian has been an arm of the State. [Id. at 27].
In this case, the trooper testified that he recognized all of the items as those taken from the trunk and that based on the "chain of evidence" usually employed he would be able to *594 properly identify the items. In addition, another detective testified that the cocaine was forwarded to the lab and that he took the rest of the items from the trooper and placed them in an evidence locker where they remained until trial. The judge overruled defendant's objection to admitting the bag, the scale, the baking soda and the cracker box.
A determination by the trial judge that the State established the requisite chain of custody will not be disturbed "in the absence of a clearly mistaken exercise" of authority. State v. Brown, supra, 99 N.J. Super. at 27. Furthermore, defendant does not dispute the fact that a Yonkers bag, a scale, a box of baking soda and a cracker box were seized from the car. He only questions whether the State established a sufficient chain of evidence to show that the items admitted at trial were the same items seized on June 17, 1985. Defendant has not established even a scintilla of undue prejudice that would result from the admission into evidence of these items even if they had been the subject of tampering.

V
Defendant was sentenced to a term of six years with a two-year period of parole ineligibility for his possession of cocaine with intent to distribute conviction. Defendant argues that he was denied the presumption of non-incarceration and the presumption against parole ineligibility periods. The State submits, however, that given the fact that defendant could have been sentenced to life imprisonment, the court's sentence was "fairly lenient."
Appellate review of a sentencing decision requires the court to examine if the proper sentencing guidelines were followed, if the trial judge's consideration of aggravating and mitigating factors was based upon competent credible evidence in the record, and if the application of the guidelines to the facts of the case makes the sentence clearly unreasonable. State v. Roth, 95 N.J. 334, 364-366 (1984); State v. Sainz, 107 *595 N.J. 283, 292 (1987) (quoting Roth and explicitly applying the standard of review to plea bargains and implicitly applying them to CDS sentences).
Defendant's first argument is that the trial judge erred by sentencing defendant to a six-year term of incarceration in contravention of the presumption of non-incarceration of his conviction. N.J.S.A. 2C:44-1e provides:
The court shall deal with a person convicted of an offense other than a crime of the first or second degree, who has not previously been convicted of an offense, without imposing sentence of imprisonment unless, having regard to the nature and circumstances of the offense and the history, character and condition of the defendant, it is of the opinion that his imprisonment is necessary for the protection of the public under criteria set forth in subsection a.
This Code provision has specifically been held applicable to the Title 24 offenses in effect at the time this crime was committed,[7] and
[s]ince Title 24 offenses are ungraded a Title 24 conviction is a crime neither of the first, the second or any other degree. Thus, the provision applies not only literally but for all of the reasons heretofore stated ...
We are, of course, aware that Title 24 offenses vary in gravity and that some are subject to severe sentences. See, e.g., N.J.S.A. 24:21-19(b)(1) authorizing a maximum of 12 years, and N.J.S.A. 24:21-19(b)(2) authorizing a maximum of life imprisonment for crimes involving specific quantities of specific drugs. Thus, while the Title 24 offenses are not graded, the Legislature has expressed its view as to the seriousness of various Title 24 offenses by its penalty prescriptions. We further note that the noncustodial sentence authorized by N.J.S.A. 2C:44-1e, may be withheld where the "nature and circumstances of the offense" indicate to the sentencing judge that a custodial term is required for protection of the public. [State v. Sobel, 183 N.J. Super. 473, 479-480 (App.Div. 1982)].
In this case, the judge made the requisite finding that the protection of the public requires defendant to serve a custodial term. The judge therefore withheld a noncustodial sentence and sentenced defendant to a six-year term of incarceration under the Code provisions and N.J.S.A. 24:21-19b(2).
*596 Defendant's second argument is that the judge erroneously sentenced him to a two-year period of parole ineligibility. To impose a period of parole ineligibility, the court must be "clearly convinced that the aggravating factors substantially outweigh the mitigating factors." N.J.S.A. 2C:43-6b. See also State v. Sainz, 210 N.J. Super. 17, 24 (App.Div. 1986), aff'd 107 N.J. 283, 289 (1987). The trial judge discussed the aggravating and mitigating factors as follows:
The aggravating factors in my opinion, are the risk that you will commit another offense, due to the great potential for profit here. Also there is, in my thinking, an obvious need to order you and others who would attempt to bring or bring free base up to this area from down south for distribution in this area.
I find no mitigating factors, except there is no prior record of conviction that I am aware of.
I am clearly convinced that the aggravating factors substantially outweigh any possible mitigating factors in setting a period of parole ineligibility.
Further, this sentence is designed to protect the public by way of incarcerating you at this time.
By imposing a two-year period of parole ineligibility on this sentence, the trial judge has virtually inverted the principle that "`[p]eriods of parole ineligibility are the exception and not the rule. They are not to be treated as routine or common-place.'" State v. Kruse, 105 N.J. 354, 359 (1987) (quoting State v. Martelli, 201 N.J. Super. 378, 382-383 (App.Div. 1985)). Defendant's parole ineligibility period was clearly applied in the prohibited "routine or commonplace" manner. Ibid. If periods of parole ineligibility are to be applied for N.J.S.A. 24:2-19b(2) convictions on these facts, there is hardly a case where a parole ineligibility period would not be applied.[8] We therefore exercise our original jurisdiction and direct the removal of the period of parole ineligibility. R. 2:10-3.
The conviction appealed from is affirmed. The sentence imposed is modified to remove the period of parole ineligibility, *597 and as modified is affirmed. We remand the matter for the entry of a modified sentence.
NOTES
[1] Ms. Barnes apparently used Grant's New York residence as her mailing address for an undetermined period of time.
[2] We have further noted that the codefendant has a BA in Economics, defendant attended college, and that both defendants are black Jamaican immigrants. Furthermore, the police never ran a fingerprint check on the evidence nor attempted to contact the lessee of the car, Pauline Barnes. But defendant, a resident of Florida, was driving a rental car to New York, and defendant did not take the stand to explain his intentions. The driving and possession of the trunk key of a car containing $6,000 street value of cocaine had been entrusted to defendant. He was a friend of codefendant who in turn was a very good friend of Pauline Barnes who used codefendant's residence as a mailing address for an undetermined period of time. The bag which contained the distribution paraphernalia was a "Yonkers Raceway" bag, and the Yonkers Racetrack is within a few miles of codefendant's apartment. Also neither defendant subpoenaed Pauline Barnes, who allegedly used them as unwitting "mules."
[3] Defendant admitted under cross-examination at the suppression hearing that he was not arrested until after the cocaine was discovered in the trunk.
[4] The judge erroneously ruled that "these defendants have no standing to challenge the search of the vehicle" because there was no showing of a possessory interest in the vehicle. The State concedes that under State v. Alston, 88 N.J. 211 (1981), where possession of the seized evidence is an element of the crime, then defendant has "automatic standing." Id. at 228. The error was harmless, however, because to protect the record, the judge made the appropriate factual findings and legal conclusions to support the admission of the evidence.
[5] We in no way mean to infer that defendant cannot maintain his Fifth Amendment right to remain silent. The defendant may remain silent. The burden of proof never shifts from the State to defendant. However, the unrebutted natural inferences that arise from actual possession of the contraband were properly considered by the jury.
[6] We reiterate that the jury may not be told to draw any adverse inference from a defendant's failure to testify. We merely note that, absent such testimony, inferences from other proof in the case may remain unrebutted. Williams v. Florida, 399 U.S. 78, 83-84, 90 S.Ct. 1893, 1896-97, 26 L.Ed.2d 446, 450-51 (1970).
[7] The Legislature has enacted substantial amendments to the provision for sentencing drug offenders. See L. 1987, c. 106, effective June 22, 1987, and specifically N.J.S.A. 2C:35-5b(2).
[8] We recognize that under N.J.S.A. 2C:35-5b(2), the legislation enacted after these events, the penalty for this conviction would be the same as for a crime of the second degree, i.e., between five and ten years without a mandatory parole disqualifier.