891 A.2d 621 (2006)
383 N.J. Super. 185
STATE of New Jersey, Plaintiff-Respondent,
v.
Avery DREW, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 2005.
Decided February 3, 2006.
*624 Yvonne Smith Segars, Public Defender of New Jersey, attorney for appellant (Jane M. Personette, Designated Counsel, on the brief).
Wayne J. Forrest, Somerset County Prosecutor, attorney for respondent (James L. McConnell, Assistant Prosecutor, of counsel and on the brief).
Before Judges CUFF, PARRILLO and HOLSTON, JR.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Following a trial by jury, defendant, Avery Drew, was convicted of third-degree attempted burglary, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:18-2. The judge granted the State's motion for an extended term and imposed an eight-year sentence with four years of parole ineligibility, to run consecutive to a custodial term defendant was concurrently serving on an unrelated matter. Appropriate fees and penalties were also imposed. Defendant appeals, and we affirm the judgment of conviction, but remand for resentencing in light of the recent holdings in State v. Natale (Natale II), 184 N.J. 458, 878 A.2d 724 (2005) and State v. Abdullah, 184 N.J. 497, 878 A.2d 746 (2005).
On June 14, 1999, at approximately 8:30 a.m., Sandra Hocker left her residence for work. She lived in a townhouse in an age-restricted condominium complex in Warren Township. Before leaving, however, she turned on her burglar alarm. She locked the front door, but did not engage the deadbolt lock.
At 1:00 p.m., a neighbor, Joanna Rossi, who was seated at the window of her townhouse, observed defendant drive up in a tan Mercedes-Benz automobile, pull first into the parking space next to Hocker's unit, back out of the space, and move his car to the last parking space in the development's lot. After parking the car, defendant walked about one hundred feet back to Hocker's unit and rang the doorbell. When no one answered, he stepped back, looked through the front window, placed one hand on the doorknob of the front door, and used his other hand to "jimmy" the lock. As soon as the door was opened, the burglar alarm went off. Hearing the alarm, Rossi called 9-1-1 and gave a description of defendant and the car. When she returned to the window, she saw defendant driving away from the development. She then advised the police of the direction defendant was heading.
Lieutenant William J. Stahl of the Warren Township Police Department responded to the 9-1-1 call and the burglar alarm. He examined Hocker's front door and noticed a scratch on the door near the handle, a tear in the rubber gasket or weather stripping around the door, and what appeared to be pry-marks between the wood doorjamb and the rubber gasket. Based *625 on these observations, Stahl radioed the other police units, informing them of an attempted burglary.
Defendant was stopped by police about one and one-half miles from the scene of the crime. He refused at first to produce his credentials, and instead made suspicious movements with his hand, sweating profusely, and appearing very nervous. The apprehending officer, Craig Maddaluna, also noticed a long screwdriver sticking out of the driver side door's map pocket. After being advised of his Miranda[1] rights, defendant at first denied that he stopped anywhere in Warren. He then claimed he had stopped at a business to ask directions, but left after realizing it was a private residence.
After other officers arrived, defendant was re-advised of his Miranda rights and he offered a second statement. He indicated that he was going to pick up a friend, Maria, at a doctor's office in Somerset, but got lost and eventually pulled into the senior citizen condominium complex in Warren, believing it was the right location. However he was mistaken, realizing as he arrived at Hocker's door that it was not a doctor's office. Defendant then contradicted himself, stating that he knocked on other doors at the complex, attempting to find his friend, and that he spoke to a woman who answered her door.
Meanwhile, Lieutenant Stahl, with Rossi in the car, arrived at the scene of the motor vehicle stop to conduct a drive-by show-up. Rossi recognized defendant's car as the one she saw in the parking lot of her condominium complex, and after going past defendant twice, she positively identified him as the individual who broke into Hocker's townhouse. On the way to headquarters, as they passed Hocker's street, Officer Maddaluna asked defendant if he had been there, to which he replied: "yeah, it looks like it."
Detective Russell Leffert proceeded to Hocker's townhouse to process the crime scene. He observed a scratch on the door near the handle as well as pry marks on the doorjamb. Hocker, who had arrived home by this point, also noticed the scratch marks on her front door as well as "chop marks" in the rubber gasket around the door, which had not been on the door prior to her leaving for work that day. When Hocker opened the front door, Leffert observed two scratches on the door lock's plunger. A chip of paint was also lying on the floor. Leffert took photographs of the pry marks and a microseal casting of the indentations. He then compared the widths of the pry marks and the paint chip with the tip of the screwdriver seized from defendant's vehicle. They matched, all measuring at 3/8ths of an inch in width.[2]
At headquarters, defendant gave his real name as "Avery Drew", after having previously identified himself as "Carol Drew." He again denied trying to break into Hocker's townhouse, however, when he was confronted with the evidence that Hocker's door had been forced open, he stated that "I may have shook the door hard enough that it may have opened a little." When he heard the burglar alarm, he realized he was not at a doctor's office.
To counteract defendant's account, the State introduced evidence of a prior break-in of a private residence in Hunterdon County, six months earlier, for which he *626 pled guilty. In that incident, the investigating officer spotted tracks in the snow leading up to the house garage window. Underneath the window was a wood pallet that the burglar used as a ladder to climb through the window. An initial search of the home failed to uncover the perpetrator, however one officer stayed behind as others left. Suddenly, defendant popped out of a closet, explaining that he was in the house my mistake: "It's okay, it's okay, I'm in the wrong house." A later search of the premises revealed pry marks on the garage window and scratch marks on a sill plate on the wooden doorjamb of one of the locked bedroom doors. Defendant eventually admitted breaking into the home by prying open the garage window using a screwdriver on the locked bedroom door.
Prior to trial on the instant offense, the court held a hearing, pursuant to State v. Crisafi, 128 N.J. 499, 608 A.2d 317 (1992), on defendant's application to represent himself at trial. The court granted defendant's motion but ordered defendant's present attorney, William Cooper, to remain as stand-by counsel. After two days of trial, due to defendant's conduct, the court determined that defendant would no longer continue pro se, and ordered Cooper to represent defendant for the remainder of the trial. When trial resumed the next day, Cooper moved to be relieved as counsel, but the court denied the request. The trial proceeded to conclusion and guilty verdict.
On appeal, defendant raises the following issues:
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING THE STATE TO INTRODUCE EVIDENCE OF DEFENDANT'S PRIOR BAD ACTS PURSUANT TO RULE 404(b) IRRESPECTIVE OF WHETHER OR NOT DEFENDANT TESTIFIED.
a. The court below erred in admitting evidence of the Hunterdon incident in the State's case in chief because the evidence fails parts two and four of the Cofield test.
b. The state had other less inflammatory evidence available to it.
II. THE FAILURE OF THE TRIAL COURT TO INCLUDE IN THE JURY CHARGE SUFFICIENT INSTRUCTIONS REGARDING THE DEFENSE OF MISTAKE OF FACT CONSTITUTES REVERSIBLE ERROR. (Not raised below).
III. THE FAILURE OF DEFENSE COUNSEL TO MOVE FOR A MISTRIAL FOLLOWING THE DECISION OF THE TRIAL COURT, APPROXIMATELY TWO-THIRDS OF THE WAY THROUGH THE TRIAL, TO NO LONGER ALLOW DEFENDANT TO REPRESENT HIMSELF PRO SE AND TO HAVE MR. COOPER REPRESENT HIM FOR THE REMAINDER OF THE PROCEEDINGS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND RESULTED IN A MANIFEST DENIAL OF JUSTICE WARRANTING REVERSAL.
IV. NO OTHER CONCLUSION CAN BE REACHED BUT THAT THE EFFECT OF CUMULATIVE TRIAL ERRORS IN THE CONTEXT OF THE PROCEEDINGS BELOW DEPRIVED DEFENDANT OF A FAIR TRIAL AND WARRANT REVERSAL.
V. THE COURT BELOW VIOLATED THE SIXTH AND FOURTEENTH AMENDMENTS TO *627 THE UNITED STATES CONSTITUTION.
VI. DEFENDANT WAS ENTITLED TO A FINDING THAT NO FEWER THAN THREE MITIGATING FACTORS APPLIED IN IMPOSING SENTENCE.

(i)
We consider the issues raised in light of the aforementioned background. First, we reject defendant's argument that the court erred in admitting evidence of the Hunterdon County crime under N.J.R.E. 404(b). In his statement to the police in this case, defendant proffered the excuse of mistake, just as he had done in the earlier incident for which he was convicted. This evidence was, therefore, relevant to show the absence of mistake in the present matter. Ibid., see also State v. Yormark, 117 N.J.Super. 315, 336-37, 284 A.2d 549 (App.Div.1971) (evidence of other crimes admissible to show intent, plan, motive, knowledge, identity, absence of mistake), certif. denied, 60 N.J. 138, 286 A.2d 511 (1972). It was relevant as well to prove another material issue in dispute and a critical element of the offense charged, namely, that defendant acted purposely with the intent to break into the residence with a further purpose to commit an offense therein. See N.J.R.E. 404(b); State v. Marrero, 148 N.J. 469, 489-90, 691 A.2d 293 (1997); State v. Stevens, 115 N.J. 289, 306, 558 A.2d 833 (1989).
Moreover, the "other crimes" evidence satisfied the other three prongs of the Cofield test. State v. Cofield, 127 N.J. 328, 338, 605 A.2d 230 (1992). It was "similar in kind and reasonably [proximate] in time to the offense charged." Ibid. The Hunterdon County burglary occurred about six months prior to the charged offense. On both occasions, defendant knocked on the door attempting to ascertain whether the inhabitant was home; gained entry into the home via screwdriver; pried open the door; entered the home alone; committed the act mid-day during the workweek; and claimed that his presence was a "mistake" upon his capture. Moreover, there was clear and convincing evidence of the other crime as demonstrated by defendant's prior conviction. Lastly, the probative value of such proof was not outweighed by its potential for prejudice. See State v. Covell, 157 N.J. 554, 568, 725 A.2d 675 (1999). In this regard, evidence offered to show state of mind, namely, motive or intent, "require[s] a very strong showing of prejudice to justify exclusion." Id. at 570, 725 A.2d 675. Here, a critical issue concerned defendant's mental culpability to which the challenged evidence was highly relevant and not so "inherently inflammatory ... as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation" of the matter. Id. at 568, 725 A.2d 675. We therefore find no abuse of discretion in the court's admission of the other crime evidence, a decision which is entitled to deference. Marrero, supra, 148 N.J. at 483, 691 A.2d 293.[3]

*628 (ii)
Defendant next argues, for the first time on appeal, that the court failed to adequately instruct on the defense of mistake of fact. We find no error, much less plain error, in the court's instructions. R. 1:7-2; R. 2:10-2.
"[E]vidence of a[ ] [defendant's] mistaken belief relates to whether the State has failed to prove an essential element of the charged offense beyond a reasonable doubt." State v. Sexton, 160 N.J. 93, 106, 733 A.2d 1125 (1999). In other words, "`[n]o person may be convicted of an offense unless each element ... is proven beyond a reasonable doubt.' `If the defendant's ignorance or mistake makes proof of a required culpability element impossible, the prosecution will necessarily fail in its proof of the offense.'" State v. Pena, 178 N.J. 297, 306, 839 A.2d 870 (2004) (quoting Sexton, supra, 160 N.J. at 100, 733 A.2d 1125 and Paul H. Robinson & Jane A. Grall, Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond, 35 STAN. L. REV. 681, 726-27 (1983)) (alterations in original). Thus, "the better way to explain the concepts is to explain what is required for liability to be established." Sexton, supra, 160 N.J. at 106, 733 A.2d 1125.
In this case, the court did precisely that. The charge correctly advised the jury that in order to convict, it had to find, beyond a reasonable doubt, that defendant purposefully attempted to enter Hocker's house and purposefully attempted to commit a theft therein. The jury was specifically instructed that a prerequisite to conviction was a finding that defendant had the conscious object to enter Hocker's house without permission to commit a theft inside. The jury was also instructed that it had to find that defendant took a substantial step towards the commission of the crime, which demonstrates defendant's criminal purpose. Significantly, for present purposes, the jury was also expressly instructed that if the State failed to prove beyond a reasonable doubt that defendant acted with the requisite mental culpability, then it must find defendant not guilty of the offense charged. Read in its entirety, the court's instruction was neither misleading nor prejudicial, instead adequately conveying the controlling legal principles.

(iii)
The next issues raised by defendant concern his own misbehavior at trial. Although he has no quarrel with the court's initial decision to allow him to proceed pro se, defendant argues that the court erred in not terminating his self-representation earlier in the trial, and that counsel was ineffective for not moving for a mistrial once that right was revoked. These arguments are without merit.
Some background is in order to place these issues in proper context. After granting his request to proceed pro se, defendant's conduct during trial gave rise to numerous sidebars outside the presence of the jury. In fact, the judge frequently excused the jury before addressing defendant's misbehavior. On one occasion, the court addressed whether defendant "used words that are-at least one word that's completely inappropriate." On another occasion, there was discussion pertaining to defendant's facial expressions in reaction to a court ruling issued during a sidebar. Another sidebar addressed defendant's comment, "Your honor getting in the way, man," which referenced another ruling defendant *629 deemed unsatisfactory. The judge also excused the jury to discuss defendant's cross-examination of a witness; and again, after defendant told the court "Man, send me to the prison, man. I am not going to sit here and go through this. You let him lie and say what he wants to say. Let these jurors hear what happened. Forget what you say."
On one occasion, outside the presence of the jury, the court stated "the record should reflect that the defendant is getting very loud, he is pointing his finger at me. He appears his demeanor is very angry, and he is essentially yelling at me as he's saying these things...." The judge further elaborated, explaining:
He has shown a great deal of hostility throughout this trial. I've given him many warnings.... But today with these last comments, and also comments that I heard he made at the break ... which were threatening.... I think there is a very serious security risk in this courtroom if [defendant], who is a State Prison inmate acting the way he's acting, stays in the courtroom.
The judge reiterated that he wanted to "give [defendant] the opportunity to be present as long as he is willing to behave himself and not disrupt the trial." However, the judge concluded that due to his conduct, he could no longer proceed pro se. As a result, after the second day of this five-day trial, the court ordered defendant's attorney, who was present on a standby basis, to proceed as counsel.
When, shortly thereafter, counsel sought to withdraw from representation, the court denied the motion, explaining that defendant's behavior was a deliberate strategy designed to cause a mistrial:
I hate to oppose Mr. Cooper's request to withdraw as counsel. I normally wouldn't do that. But if his request to withdraw as counsel would lead to a mistrial, I would have to oppose it. The reason is we're at the conclusion of the State's case. The record should reflect that I think this is a calculated move by the defendant to cause a result of a mistrial, and I believe that if that result were to occur here, we would be in the exact same situation two or three months from now with the next attorney when we would be trying the case next time.
. . . .
He has been through four attorneys.... his right to represent himself has been revoked. So we really can't proceed on those grounds.
The court further explained that
[T]here is no basis for stopping and getting a new attorney and starting all over again. The new attorney is likely to have the same problems as you have had, Mr. Cooper. There is no real possibility of a new attorney stepping in at this stage of the trial and finishing the case. It would at the very least take a long delay of several weeks for a new attorney to become familiar with the facts of the case, to read transcripts of the proceedings so far, and perhaps be in a position to step in and finish examination of witnesses and make a closing argument and discuss the jury charge.
But such a long delay would be very prejudicial, probably to both parties ... because then the jury would have to wait several weeks before the case could be concluded on a relatively simple case.
Sensitive to the right to a fair and impartial trial despite defendant's own behavior threatening to compromise that right, the court carefully and intelligently instructed the jury:
Ladies and gentlemen, I asked you to leave the courtroom at the point where [defendant] was expressing some displeasure *630 with rulings that I've made here. He has been warned that he cannot be disruptive in the courtroom, and currently he is not present in the courtroom.
. . . .
[P]lease remember that you must focus your attention on the evidence in the case and the instructions of law that I give you. Whether or not there is any kind of conduct that is inappropriate for a courtroom or whether or not there is any kind of discussion or colloquy back and forth between me and a party or a witness and a party that isn't in the form of evidence that's relevant to the case should not be considered by you. You should put that aside and decide the case based on the evidence that you are hearing in the course of this case.
On another occasion, the judge again instructed the jury to disregard defendant's conduct, and instead to focus on the evidence:
[R]emember that what the parties may have said in their arguments to you, in discussions with me, or in questioning witnesses does not constitute evidence. Only if a witness confirmed what was said in a question, or if there is some kind of documentary or tangible evidence before you to support the statement, should you consider the party's statement as evidence that you may weigh along with other evidence in the case.
. . . .
Also, any remarks made by me to the parties or by them to me are not evidence and should not affect or play any part in your deliberations. Nor should you speculate about the subject of or reasons for any side-bar conferences I held. Again, those discussions involve questions of law for my determination and they do not constitute evidence in the case.
It is clear that "the Sixth Amendment grants a defendant the right to represent himself in criminal proceedings." State v. Gallagher, 274 N.J.Super. 285, 294, 644 A.2d 103 (App.Div.1994) (citing Faretta v. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, 574 (1975)). "[A] state may not constitutionally impose a lawyer upon an unwilling defendant .... The right to defend is personal, and it is the defendant, not his lawyer ... who will bear the consequences of a conviction." Gallagher, supra, 274 N.J.Super. at 295, 644 A.2d 103. This is so even though "the defendant may conduct his defense ultimately to his own detriment...." Ibid. (citing Faretta, supra, 422 U.S. at 834, 95 S.Ct. at 2541, 45 L.Ed.2d at 581).
Although a defendant is entitled to proceed pro se, "[a] defendant who forgoes his right to counsel must be `able and willing to abide by [the] rules of procedure and courtroom protocol.'" Gallagher, supra, 274 N.J.Super. at 297, 644 A.2d 103 (quoting McKaskle v. Wiggins, 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122, 130, reh'g denied, 465 U.S. 1112, 104 S.Ct. 1620, 80 L.Ed.2d 148 (1984)) (second alteration in original). "The right of self-representation cannot be insisted upon in a manner that will obstruct the orderly disposition of criminal cases." State v. Buhl, 269 N.J.Super. 344, 363, 635 A.2d 562 (App.Div.), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994). In other words, the right to proceed pro se does not provide either "a license to abuse the dignity of the courtroom" or the right to refuse "to comply with relevant rules of procedural and substantive law." Faretta, supra, 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46. Accordingly, "the trial judge may terminate *631 self-representation by a defendant who deliberately engages in serious and obstructionist [behavior]." Ibid.
For example, courts have found a number of instances where a defendant was no longer allowed to proceed pro se. See United States v. West, 877 F.2d 281, 287 (4th Cir.) (explaining that defendant forfeited his right to proceed pro se when he "directly attacked the district court's integrity and dignity" during opening arguments), cert. denied sub nom., Mills v. United States, 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989); People v. Clark, 3 Cal.4th 41, 10 Cal.Rptr.2d 554, 833 P.2d 561, 598 (1992) (revoking defendant's pro se status when defendant chose to stand mute for the rest of trial), cert. denied sub nom., Clark v. California, 507 U.S. 993, 113 S.Ct. 1604, 123 L.Ed.2d 166 (1993); People v. Krom, 91 A.D.2d 39, 45, 458 N.Y.S.2d 693 (1983) (explaining that revocation of pro se status is appropriate when "[t]he record discloses numerous instances of the kind of disruptive and obstreperous conduct"), aff'd, 61 N.Y.2d 187, 473 N.Y.S.2d 139, 461 N.E.2d 276 (1984); Green v. State, 277 Ark. 129, 639 S.W.2d 512, 513 (1982) (denying motion to proceed pro se when defendant refused to comply with court rule mandating that briefs be either typed or printed); German v. State, 268 Ind. 67, 373 N.E.2d 880, 883 (1978) (forfeiting pro se status because he abusively cross-examined a witness, argued with the trial judge although warned that his behavior was inappropriate, and refused to participate further in the trial).
Here, it is clear that the trial judge properly struck the delicate balance between honoring defendant's right to conduct his own defense "out of ... `respect for the individual'," Gallagher, supra, 274 N.J.Super. at 295, 644 A.2d 103 (quoting Faretta, supra, 422 U.S. at 834, 95 S.Ct. at 2541, 45 L.Ed.2d at 581), and maintaining... the dignity of the courtroom.'" Buhl, supra, 269 N.J.Super. at 363, 635 A.2d 562 (quoting Faretta, supra, 422 U.S. at 834, n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46). We are satisfied that defendant's right of self-representation was terminated only when it became evident that this compromise could no longer be effectively accommodated. Even then, the trial judge took pains to ensure that defendant's own behavior did not prejudice his right to a fair and impartial trial. In the first place, while some of defendant's conduct was visible to the jurors, most of the discussions transpired either during a sidebar or after the jury was excused. Just as significant, the judge instructed the jury to disregard defendant's behavior and focus on the evidence, and we presume the jury faithfully followed these instructions. State v. Manley, 54 N.J. 259, 271, 255 A.2d 193 (1969); State v. Murray, 240 N.J.Super. 378, 390, 573 A.2d 488 (App.Div.), certif. denied, 122 N.J. 334, 585 A.2d 350 (1990); State v. Perez, 218 N.J.Super. 478, 487, 528 A.2d 56 (App.Div.1987). Therefore, under the circumstances, we find no impairment of defendant's right to a fair trial.
In light of this determination, we also find counsel was not ineffective for failing to move for a mistrial. It is virtually axiomatic that in order for defendant to obtain relief based on ineffective assistance grounds, he is obliged to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to fair trial. See, e.g., Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987). We are persuaded that the alleged deficiency here clearly fails to meet either the performance or prejudice prong of the Strickland test. Certainly, as to the latter, *632 as the trial judge indicated in his denial of counsel's request to withdraw, a motion for a mistrial would have been equally unsuccessful given defendant's deliberate misbehavior designed to impede the proceedings and induce a mistrial.

(iv)
Lastly, defendant argues that the imposition of an extended eight-year term with a four-year parole bar is violative of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, reh'g denied, 542 U.S. 961, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004). It is undisputed that defendant was extended-term eligible as a persistent offender, N.J.S.A. 2C:44-3a. Moreover, the judicial fact finding respecting a defendant's eligibility for an extended term as a persistent offender, N.J.S.A. 2C:44-3a, does not violate Blakely because it is predicated on defendant's prior record. State v. Young, 379 N.J.Super. 498, 510, 879 A.2d 1196 (App.Div.2005); State v. McMillan, 373 N.J.Super. 27, 28, 860 A.2d 484 (App.Div.2004), certif. denied, 182 N.J. 628, 868 A.2d 1031 (2005); State v. Dixon, 346 N.J.Super. 126, 139-41, 787 A.2d 211 (App.Div.2001), certif. denied, 172 N.J. 181, 796 A.2d 898 (2002).
After determining whether the minimum statutory predicates exist to subject a defendant to an extended term and to impose such a term, as here, the judge must then "weigh the aggravating and mitigating circumstances to determine the base term of the extended sentence." State v. Dunbar, 108 N.J. 80, 89, 527 A.2d 1346 (1987). Prior to the decisions in Natale II, supra, and Abdullah, supra, "third degree extended sentence ... `h[ad] a presumptive term of seven years' imprisonment.'" Young, supra, 379 N.J.Super. at 512, 879 A.2d 1196 (quoting N.J.S.A. 2C:44-1(f)(1)) (citing N.J.S.A. 2C:43-7a(4)). That being said, the judge here, convinced that the aggravating factors, N.J.S.A. 2C:44-1(a)(3), (6), (9), and (12), substantially outweighed the lone mitigating factor, N.J.S.A. 2C:44-1(b)(11), imposed an extended term of eight years, with a four-year parole bar.
As we recently pointed out in Young:
In Natale II the Supreme Court stated that, under our Code of Criminal Justice, "before any judicial fact finding, the maximum sentence that can be imposed on a jury verdict or guilty plea is the presumptive term," and therefore "the `statutory maximum' for Blakely and Booker purposes is the presumptive sentence." Natale II, supra, 184 N.J. at 484[, 878 A.2d 724]. See also Abdullah, supra, 184 N.J. at 505[, 878 A.2d 746] (citing Natale II, supra, 184 N.J. at 484[, 878 A.2d 724]). The Court therefore "eliminated the presumptive terms" creating the "`statutory maximum' authorized by the jury verdict or the facts admitted by a defendant at his guilty plea [as] the top of the sentencing range for the crime charged." Natale II, supra, 184 N.J. at 487[, 878 A.2d 724]. [Young, supra, 379 N.J.Super. at 514, 879 A.2d 1196 (footnote omitted) (alteration in original).]
The elimination of the presumptive term also applies to extended terms embodied in N.J.S.A. 2C:43-7. Ibid. Therefore, as directed by Natale II, a new sentence hearing... [is mandated] based on the record at the prior sentencing." Natale II, supra, 184 N.J. at 495, 878 A.2d 724. At re-sentencing the judge "must determine whether the absence of the presumptive term in the weighing process requires the imposition of a different sentence." Id. at 495-96, 878 A.2d 724. The judge "should not make new findings concerning the quantity or quality of aggravating and mitigating factors previously found." Id. at *633 496, 878 A.2d 724. Clearly, here, the court's finding on aggravating factor (12) was not predicated on defendant's prior record, and we are unable to ascertain on this record whether the judge predicated his findings of aggravating factors (3), (6) and (9) on considerations in addition to defendant's prior record, although that clearly was a dominant concern.[4]
Accordingly, we remand for re-sentencing in accordance with Natale II. On remand, the judge shall follow the dictates of Natale II and Abdullah in fixing the specific term of the extended sentence. The judge may also consider imposition of a parole ineligibility term. Abdullah, supra, 184 N.J. at 511-12, 878 A.2d 746; N.J.S.A. 2C:43-7b. The sentence, however, shall be no greater than the aggregate sentence originally imposed. Natale II, supra, 184 N.J. at 496, 878 A.2d 724. In all other respects, the defendant's conviction is affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] When submitted to the State Police Laboratory for comparison, it was determined that the pry marks recorded in the cast impression exhibited "class characteristics" of having been made by a tool with similar characteristics as defendant's screwdriver.
[3] We also note that the judge gave a proper limiting instruction with respect to this "other crime" evidence:

If you are satisfied that he committed a burglary in Raritan Township, then you can only use that evidence for the limited purpose of deciding an issue of whether it was the defendant's intent on June 14th, 1999, in Warren Township to commit a burglary at 123 Town Center Drive, or whether, as he said to the police after his arrest, he mistook that address for a doctor's office where he was going to pick up a female friend. In other words, the evidence of the other alleged burglary was admitted and may be considered by you only with respect to the issue of defendant's intent on June 14, 1999, in Warren Township, and whether or not he made a mistake. That evidence is not to be used by you for any other purpose. You may not use it to conclude that the defendant is disposed to act unlawfully and so he must be guilty of the crimes charged in this case.
[4] We are mindful that the Supreme Court has suggested that "aggravating factors (3), (6), and (9) ... [may be] the basis for increasing defendant's sentence above the presumptive" if they relate to the defendant's prior record. Abdullah, supra, 184 N.J. at 506, 878 A.2d 746.