204 N.J. Super. 496 (1985)
499 A.2d 515
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM MCMEEKIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 28, 1985.
Decided May 24, 1985.
*497 Before Judges KING and BILDER.
Joseph H. Rodriguez, Public Defender of New Jersey, attorney for appellant (George Tosi Paterson, Designated Counsel, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (Victoria Curtis Bramson, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This case presents a claim that defendant's resentencing at his own option resulted in an enhancement of punishment in violation of principles of double jeopardy. Defendant McMeekin was indicted in four counts in August 1979 for the murder *498 of his wife, N.J.S.A. 2A:113-1, 2; assault with intent to kill John Taylor, N.J.S.A. 2A:90-2; atrocious assault and battery upon John Taylor, N.J.S.A. 2A:90-1, and for committing these crimes while armed, N.J.S.A. 2A:151-1. In a jury trial before Judge Huber he was found guilty of manslaughter of his wife and also was found guilty on the other three charges.
He was originally sentenced by Judge Huber in July of 1980 after electing to be sentenced under Title 2C, the then-new Code of Criminal Justice, effective date September 1, 1979. N.J.S.A. 2C:98-4. For sentencing purposes, the judge merged the three counts dealing with Taylor's shooting into one count of aggravated assault. At sentencing Judge Huber said
I presided at your trial, but you didn't give your wife and John Taylor any trial at all. You charged them; you judged them; and you executed them in a very short period of time. They never had a chance to explain, ask you for mercy. You took your wife's life and you also intended to take Taylor's life, and it was only, I think, his natural bodily vigor which sustained him and enabled him to survive.
These are very serious crimes. You killed your wife and you intended to kill your best friend and you shot and severely injured him.
I find that the aggravating factors exceed the mitigating factors. I find that the second degree offense is between five and ten years and it has to be a definite term of years. For the crime of manslaughter of Susan McMeekin I sentence you to ten years in a New Jersey state prison and order that you not be eligible for parole for a period of five years. The crime of assault with intent to kill John Taylor, I sentence you to seven years in New Jersey state prison and order that you not be eligible for parole on that sentence for three years. The sentence for the crime of assault on John Taylor is to run consecutive with the sentence of manslaughter.
Thus the aggregate Title 2C sentence was a maximum of 17 years and a mandatory term of eight years before parole eligibility. N.J.S.A. 2C:43-6(b). The judge also imposed a $1,000 penalty on each of the two counts. In his statement of reasons, the judge repeated that the aggravating factors exceeded the mitigating factors and noted that "defendant who is asking for mercy from the court, showed none to his wife and friend when he discharged the gun at both."
Defendant then appealed his conviction to this court. He made a number of contentions of error, including the assertion *499 that his sentence was excessive. The appeal was decided by affirmance on July 13, 1982. We made these observations at that time as to the sentence
The defendant's aggregate jail sentence was 17 years, with a minimum of eight years to be served before becoming eligible for parole. N.J.S.A. 2C:43-6(b). This sentence was imposed pursuant to defendant's election to be sentenced under the Code. Defendant contends that he was deprived of the effective assistance of counsel because he was not properly advised with regard to the potential sentences that could have been imposed, particularly with respect to the imposition of a period of parole ineligibility. On a motion to reduce the sentence made prior to this appeal, defendant's trial attorney stated that he had recommended to defendant to elect to be sentenced under the Code. Subsequent to oral argument, in response to our inquiry, designated counsel has now advised this court that if given an election at this time defendant would prefer to be sentenced under Title 2A rather than under Title 2C (the Code). A letter to this effect signed by defendant has also been submitted to us.

Under Title 2A defendant could have been sentenced to a maximum term of ten years for manslaughter, 12 years for assault with intent to kill and ten years for committing the assault while armed as charged under count four of the indictment. N.J.S.A. 2A:113-2; N.J.S.A. 2A:90-2; N.J.S.A. 2A:151-5. The potential maximum aggregate sentence under Title 2A was, therefore, 32 years. The maximum sentence for atrocious assault and battery under N.J.S.A. 2A:90-1 was seven years. However, the trial judge merged the conviction for atrocious assault and battery into the more serious conviction for assault with intent to kill. Because defendant elected to be sentenced under the Code, and the armed feature would play no role in such a sentence, the trial judge also merged and vacated the conviction on count four. The crimes of assault with intent to kill and atrocious assault and battery both constituted aggravated assault under the Code, N.J.S.A. 2C:12-1(b), which is a crime of the second degree for which a maximum prison term of ten years can be imposed. Manslaughter committed in the heat of passion resulting from a reasonable provocation is also a crime of the second degree under the Code, N.J.S.A. 2C:11-4(c), carrying a maximum of ten years. Accordingly, the maximum sentence that could have been imposed on defendant under the Code was 20 years. A parole ineligibility period of up to one half of the maximum or ten years could also have been imposed. N.J.S.A. 2C:43-6(b).
Thus, it cannot be said that defense counsel committed a grave error in recommending that defendant be sentenced under the Code. The worst sentence that could have been imposed was 20 years with a ten year parole ineligibility period. Under Title 2A defendant could have been sentenced to 32 years without a period of parole ineligibility. While defendant might have become eligible for parole earlier with a Title 2A sentence than the eight year minimum parole ineligibility period that was actually imposed, this could not have been predicted at the time sentence was imposed. Moreover, there was no guaranty that defendant would be paroled as soon as he became eligible. Thus, *500 the maximum term that he could have been required to serve under a Title 2A sentence could have exceeded the time to be served under a Title 2C sentence.
The record is not entirely clear as to the advice defendant received prior to sentencing. No motion was made to the trial court to withdraw his election for sentencing under the Code, and until we raised the issue at oral argument, defendant never clearly asserted that he would elect to be sentenced under Title 2A. The brief for defendant on appeal asserts that the maximum sentence that could have been imposed under Title 2A was 22 years. This was written under the assumption that the armed feature conviction under N.J.S.A. 2A:151-5 was merged and vacated. However, had defendant been sentenced under Title 2A, the armed feature conviction under count four would not have been vacated, and a maximum sentence of 22 years could have been imposed for the assault with intent to kill while armed.
Thus, we find an insufficient basis for the contention that defendant was deprived of the effective assistance of counsel at the time of sentencing. However, we reject that contention without prejudice to defendant's right following the disposition of this appeal to move for reconsideration of sentence and to vacate the election to be sentenced under the Code on the ground that the election was made with inadequate and misleading advice. The granting of such a motion would restore the Title 2A convictions as they existed before sentencing, except that the conviction for atrocious assault and battery would still be merged into the assault with intent to kill conviction. The conviction under count four for being armed would be restored, exposing defendant to an enhanced sentence for having committed an assault with intent to kill while armed. As indicated above, defendant could not be sentenced under the Code to an enhanced term for having been armed while committing the comparable crime of aggravated assault. However, if sentenced under Title 2A the conviction under count four need not have been vacated. [Emphasis supplied].
Thus, we know that defendant was fully advised from our prior opinion that the maximum sentence under Title 2A was 32 years. Our prior opinion gave defendant the right to exercise his option for a Title 2A sentence, even at that late date, two years after his original sentencing.
On November 19 the defendant moved for reconsideration of sentence and the motion was granted. Before defendant exercised his option, he was warned by the judge that if he again opted for a Title 2C sentence, the sentence would be the same. Defendant then chose to be sentenced under Title 2A. Before the resentencing Judge Huber also explained the parole implications *501 of a maximum Title 2A sentence of 32 years[1], as follows
If you want to go on to the old law [Title 2A], then I will hear you, but we may be talking about the difference between six and eight years. In other words, if under the new code and what the sentence is he can't get any more from me, of course, he has eight years to serve without parole. If parole is approximately one-fifth of your total time, given all the other factors that they use, then he will do six years plus maybe a couple of months without parole before he is eligible for parole.
So, I thought he was talking about two years. I thought that's why he was applying to get under the old law, so that he could cut two years off his parole time when he couldn't have parole.
Defendant's counsel then reviewed the parole eligibility data on the record, noting that with a maximum sentence cutoff at 29 years, the parole eligibility date was substantially more favorable to defendant than with maximum of 30 years or more. Defense counsel stated on the record: "He is asking, Your Honor, that the court would not give him more than twenty-nine years because if you give him the extra three that would really affect the time he is serving and his ability to get on the farm ... and if the Court gave him twenty-five to twenty-nine in total, then that would actually solve a lot of problems and he'd go away happy."
The judge then sentenced defendant to ten years on the manslaughter conviction, N.J.S.A. 2A:113-5, ten years on the assault with intent to kill conviction, N.J.S.A. 2A:90-2, and ten years on the "while armed" conviction, N.J.S.A. 2A:151-5.[2] The three sentences were to be served consecutively.
On this appeal, defendant contends that the "court erred in imposing an additional 13-year term." We do not view the matter so simplistically; we disagree and affirm. We do not consider this a case of an increase in sentence, exclusive of all other considerations. Defendant was in the "transitional" class of offenders who could choose whether to be sentenced under *502 Title 2A or Title 2C. N.J.S.A. 2C:1-1(c)(2). Without doubt, he made an eyes-open, clear-cut choice after sound advice concerning the possibilities. What he really claims is that the judge could give him no more than a 17-year maximum under Title 2A because that was his prior maximum under the Title 2C sentence. Defendant was fully warned in our prior opinion, as well as by the sentencing judge, that resentencing "would restore the Title 2A convictions as they existed before sentencing, except that the conviction for atrocious assault and battery would still be merged into the assault to kill conviction. The conviction under count four for being armed would be restored, exposing defendant to an enhanced sentence for having committed an assault with intent to kill while armed." We do not think the judge was hamstrung by his prior Title 2C maximum. Defendant had no vested right under constitutional double-jeopardy principles to the lowest possible maximum, the 17 years under Title 2C already imposed, and the best parole eligibility date, pursuant to Title 2A, when he opted for resentencing. He had a right to be legally sentenced under either Title 2A or 2C, not to the optimal hybrid sentence conceivable under a fractionalization of both schemes.
In determining whether sentences may be increased, the New Jersey and United States Supreme Courts have focused on whether the defendant is being resentenced with a "clean slate" and whether he has a legitimate expectation of finality regarding his original sentence. The Supreme Court addressed the issue in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). There, a defendant's conviction was reversed on appeal and he was granted a new trial. He was convicted at his second trial and was sentenced to a longer term than he had received after the initial conviction. The Court held that the longer sentence did not subject the defendant to double jeopardy because his first conviction had been "at the defendant's behest, been wholly nullified and the slate wiped clean." Id. at 721, 89 S.Ct. at 2078. The Court upheld the subsequent longer sentence, but placed an affirmative duty on *503 the sentencing judge to explain why he was giving a longer sentence than the original one imposed. Id. at 726, 89 S.Ct. at 2081.
We conclude that the Pearce test was met because the Title 2C conviction and sentencing slate was wiped clean by defendant's own request, not by any act of the State or the court. Moreover, defendant did not necessarily receive a "longer" sentence but a different sentence. Whether his new sentence is actually "longer" in terms of time served depends basically on his future institutional conduct, the parole board's evaluation, and any possible revision of the parole system, subject to law. See Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).
Relying primarily on Pearce, our Supreme Court held that a probation violator who was being resentenced for the violation cannot have his sentence "enhanced." State v. Ryan, 86 N.J. 1 cert. den. 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). In Ryan, the defendant had been sentenced to concurrent three to five-year terms of imprisonment and six months later had his sentence modified under R. 3:21-10(b); he was placed in a drug treatment program and given two years probation. When he violated his probation, the judge gave him concurrent five to seven-year sentences, longer than his original sentence. The Supreme Court set aside the new sentence, noting that once a sentence goes into effect it cannot be enhanced. Id. at 8-9. The Court noted that while his original sentence had been modified, the underlying conviction was unaffected; the slate was not "wiped clean" because only the custodial character of the sentence, and not the underlying conviction, had been changed. Id. at 13-14. In Ryan the entire sentencing scheme was under Title 2A; there was no option for an alternate scheme for either the State or the defendant.
The Ryan Court distinguished the case from United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), saying that since the defendant had already begun to *504 serve his sentence an expectation of finality arose; this expectation triggered the protection of the double jeopardy clause in a manner similar to a jury's verdict of acquittal. 86 N.J. at 8-9.
In DiFrancesco, the defendant had been convicted of racketeering and several related crimes which allowed the court to sentence him as a "dangerous special offender." The United States appealed the original sentence under a statute allowing the review of a sentence imposed on a dangerous special offender, 449 U.S. at 122-123, 101 S.Ct. at 429-30. DiFrancesco claimed that this review, which could have resulted in a longer sentence, violated his rights under the double jeopardy clause. The Circuit Court agreed and dismissed the government's appeal. Ibid.
The United States Supreme Court reversed the Circuit Court, noting that "double jeopardy considerations ... do not prohibit review of a sentence". Id. at 136, 101 S.Ct. at 437. The Court said that the purpose of the double jeopardy provision was to protect against "repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety and insecurity, and the possibility that he may be found guilty even though innocent." Ibid. The Court noted that the Clause "does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." Id. at 137, 101 S.Ct. at 437. The Court concluded that since the defendant was aware that his sentence was subject to increase on appeal, his "legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked." Ibid.
The Circuit Court had relied on several older Supreme Court cases for the proposition that an increased sentence "constitutes multiple punishment in violation of the Double Jeopardy Clause." Id. at 138, 101 S.Ct. at 438. The Supreme Court rejected this contention and limited the protection of the Clause to situations where the defendant has already served his sentence. *505 The Supreme Court concluded that since Congress had allowed appeal of the sentence by statute, there was no expectation of finality in the length of the sentence and the Circuit Court's holding to the contrary was erroneous. Id. at 139, 101 S.Ct. at 438. See State v. Roth, 95 N.J. 334, 344-345 (1984) (federal and State double jeopardy clauses coextensive in sentencing context); see also N.J.S.A. 2C:44-1(f)(2) (appeal by State from certain sentences); State v. Jones, 188 N.J. Super. 201 (App.Div. 1983).
The most recent pronouncement on increased sentences came from our Supreme Court in State v. Rodriguez, 97 N.J. 263 (1984). In Rodriguez, the defendant successfully appealed from convictions for robbery and felony murder, persuading the Appellate Division to merge the two crimes and vacate the robbery conviction. Id. at 267. This court also denied the State's request that the defendant be resentenced de novo for the merged felony murder conviction, saying that this would expose him to double jeopardy.
Our Supreme Court first classified the situation as one where the defendant was attacking his substantive convictions on appeal and noted that the "application of merger can have significant penal consequences." Id. at 270-271. The Court said
Since the underlying substantive convictions in this case were themselves the subject of attack on an appeal in which defendant sought their modification, no legitimate expectation of finality could be invested in the underlying convictions or the sentences related to them. [Id. at 271].
Our Supreme Court reversed, saying that the defendant
may lawfully be sentenced for felony murder to a term that will not exceed the aggregate sentences originally imposed separately for the offenses of felony murder and robbery. [Id. at 277].
Thus, while the defendant could be sentenced on the newly merged conviction to a sentence greater than his original felony murder sentence, he could not be given a sentence greater than the aggregate of the sentences for both the felony murder and robbery convictions. Id. at 273-274.
*506 The law on resentencing as expressed by these cases may be summarized as follows. Resentencing to a term greater than the original term is constitutionally permissible if the defendant's conviction is reversed on appeal, he is retried and convicted a second time, and the judge giving the longer sentence explains his reasons. A sentence may be increased if the defendant has yet to begin serving it. A sentence which has been conditionally modified can be reinstated when the condition (probation) is violated, but a greater sentence may not be imposed. Finally, a new sentence reflecting the merger of two offenses can be greater than the sentence for the greater of the two merged offenses but no greater than the sum of the sentences for the two offenses.
The primary concern addressed in these opinions is the defendant's legitimate expectations of finality. In DiFrancesco and Roth, the defendant had no expectation of finality because he had yet to serve his sentence and a statute provided for appellate review. Conversely, once the defendant in Ryan began to serve his original custodial sentence, no greater sentence could be imposed because his substantive conviction remained unchanged and the violation of probation conditions did not affect it.
The case before us appears to be one of first impression in this State. The sentence under Title 2A is longer if only the maximum terms are considered but the Title 2C sentence is longer if the periods of the parole ineligibility are compared. We are certain from this record that the ultimate date of first parole eligibility, and not the maximum terms, influenced defendant McMeekin to ask to be sentenced under Title 2A the second time around. The maximum was not his concern; his desire was to escape the eight-year parole disqualifier.
If the two sentences are considered absolutely comparable for all purposes, under a mechanistic interpretation of the case, it might be necessary to vacate defendant's second sentence and order a maximum 17-year Title 2A sentence with a minimum *507 that really has no significance in this context.[3] The Title 2A sentence has the higher maximum and he had already begun to serve his first sentence. A narrow reading of precedent could be used to justify vacating the sentence but would ignore the underlying rationale that guided those decisions: protecting the defendant's expectation that a sentence has become final and beyond tampering by the State or court. Vacation of the second sentence would be anomalous here because the defendant chose to be sentenced under Title 2A knowing of his exposure to a greater maximum term under 2A but equally aware that he would probably serve less real time because of the earlier parole date.
Defendant had no real expectation that his first sentence was final once he elected resentencing. He was not given the choice between an established sentence and some mysterious "alternative"; rather, he was told by both this court and the trial judge that if he opted to be resentenced under Title 2A the conviction for committing a crime while armed would be reinstated, his maximum sentence could be greater, but that he could become eligible for parole earlier. This appeal as presented by defendant confronts the court with the difficult task of comparing things which are in fact not at all comparable.
Defendant really wants us to declare that he has a vested interest in the best of both sentencing schemes, i.e., parole eligibility under Title 2A and longevity under Title 2C. The alternative sentencing provision under the new Code, N.J.S.A. 2C:1-1(c), which led to this problem was designed to give defendants a fair shake and minimize disparity during the transitional period, not necessarily to give them the best possible deal through exercising serial sentencing options until they struck the optimum in lenity.
*508 Defendant was not subjected, oppressively and vexatiously, to multiple or enhanced punishment by an unconstitutional sentence. He chose to be resentenced under the prior law after he was fully apprised of the benefits and detriments. See State v. Kovack, 91 N.J. 476, 483-484 (1982). His eyes were open. He cannot embrace the benefit alone and cast aside the detriment of the new sentence.
The matter is remanded to the sentencing judge to set minimum terms as required by N.J.S.A. 2A:164-17. Jurisdiction is not retained. As modified the judgment is
Affirmed.
NOTES
[1] See N.J.S.A. 30:4-123.51(j); N.J.A.C. 10A:71-3.2(a).
[2] Minimum sentences, as required by N.J.S.A. 2A:164-17, were not given by the judge.
[3] The minimum only has significance for parole purposes if it is less than one-third of the maximum. N.J.S.A. 30:4-123.10.