225 N.J. Super. 564 (1988)
543 A.2d 88
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ERNEST ODOM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 12, 1988.
Decided June 10, 1988.
*565 Before Judges ANTELL, DEIGHAN and R.S. COHEN.
Alfred A. Slocum, Public Defender, attorney for appellant (Roderick Taylor Baltimore, Assistant Deputy Public Defender, on the brief).
John P. Goceljak, Special Deputy Attorney General-in-charge, Acting Passaic County Prosecutor, attorney for respondent (Vickie Harrell-Burke, Special Deputy Attorney General, Acting Assistant Prosecutor, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
Defendant was arrested in possession of 18 vials of "crack," a highly addictive form of cocaine. After a trial by jury he was convicted of possession of a controlled dangerous substance, N.J.S.A. 24:21-20, and possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 24:21-19a(1), and sentenced to concurrent terms of probation on each conviction for a period of three years. He was also ordered to pay a penalty of $25 on each offense to the Violent Crimes Compensation Board. He now appeals from the conviction for possession with intent to distribute on the ground that a police officer, qualified as an expert witness, was allowed to testify to his opinion that defendant possessed the drug with intent to distribute. The officer was asked the following question:

*566 Based upon your experience and assuming these facts to be true, do you have an opinion as to whether Ernest Odom possessed 18 vials of crack for his own use or possessed them with the intent to distribute them?
After a short colloquy during which the court overruled defendant's objection that the witness was incompetent "to testify as to a state of mind," the question was restated as follows:
Do you have an opinion whether those 18 vials of crack were possessed for personal use or for the purpose of distributing them?
The witness answered that he had such an opinion, and then testified that defendant possessed the substance with "[t]he purpose of distributing them with intent to distribute [sic]."
Evid.R. 56(3) provides: "Testimony in the form of opinions or inferences otherwise admissible under these rules is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."[1] So stated, the principle is one which is familiar to our case law. See, for example, State v. Louf, 126 N.J. Super. 321, 344 (App.Div. 1973), rev'd in part on other grounds, 64 N.J. 172 (1973); State v. Boiardo, 111 N.J. Super. 219, 238 (App.Div. 1970), certif. den. 57 N.J. 130 (1970), cert. den. 401 U.S. 948, 91 S.Ct. 931, 28 L.Ed.2d 231 (1971); Shutka v. Pennsylvania R.R. Co., 74 N.J. Super. 381, 401 (App.Div. 1962), certif. den. 38 N.J. 183 (1962). In each of these cases, although the court found the opinion testimony admissible, it made a point of stating that the witness did not opine on the ultimate question of civil or criminal liability.
In Shutka the court approved testimony from an expert witness that a railroad crossing did not conform to standards of care governing public travel on public roads. It reasoned that what the jury would ultimately have to decide was whether *567 defendant had been negligent in the maintenance of the crossing or in the operation of its trains thereon, and whether that negligence was the proximate cause of the accident. The court explained that this determination would require consideration of a number of issues focusing on whether precautions taken by defendant conformed with standards of reasonable care. "The proffered evidence thus involved an opinion upon a matter upon which the ultimate question depended." Id. at 400. The following language of that court at 401-402 is enlightening as to the distinction to be made between the ultimate jury question of liability and the ultimate issue as to which an expert witness may opine:
Of course, a statement by a witness which amounts to little more than an expression of his belief as to how the case should be decided, or as to the amount of damages which should be given, or as to the credibility of certain testimony, is in an entirely different category. There is no necessity for such evidence, and to receive it would tend to suggest that the judge and jury may vest responsibility for decision upon the witnesses. McCormick, Evidence (1954), § 12, pp. 24-28, at p. 25. But the opinion testimony of experts relating to the ultimate issue, i.e., the propriety and safety of a condition or appliance, is allowed in those cases in which such testimony is reasonably necessary to give the court and jury an intelligent understanding of the subject matter in controversy.
In Biro v. Prudential Ins. Co. of America, 110 N.J. Super. 391 (App.Div. 1970), the majority opinion, which was reversed by the Supreme Court, allowed a physician to opine, as part of a defense to an action upon a life insurance policy, that the deceased had taken his own life. In his dissenting opinion, which the Supreme Court adopted for its reversal at 57 N.J. 204 (1970), Judge Matthews wrote the following:
I believe that permitting the medical examiner to testify as to the conclusion of suicide, as the majority would, tends to mislead the jury into thinking that he knows something that they do not know. What is at stake here is nothing less than the myth cult of the expert to whom too many individuals are inclined to look for wisdom. My position does not derive from an anti-expert bias, but from a respect for the duties and limits of the jury. I believe that the admission of such a conclusion would confound and distort the delicate balance which is the fact-finding process. The jury is perfectly competent, given the medical and physical evidence, to come to its own conclusion about whether the death was a suicide. The majority also cites the Report of New Jersey *568 Supreme Court Committee on Evidence, p. 110, (March 1963) as supportive of its conclusion. I draw attention to other language on that same page:
"In Shutka v. Pennsylvania R.R. Co., 74 N.J. Super. 381, 181 A.2d 400 (App.Div.), certif. denied, 38 N.J. 183 (1962), the Appellate Division, citing Uniform Rule 56(4), recently held that it was proper to permit an expert witness to give an opinion on an ultimate fact, the test being whether `the trier of the facts would thereby be assisted in the solution of the ultimate problem.'"
The Committee also pointed out that
"* * * such questions as `Was the defendant negligent?' `Is the accused guilty?' Or `Did the defendant have reasonable cause to institute the prosecution?' would be impermissible on the basis either that under 56(1)(b) they are not `helpful,' or under Rule 45. (at 110)."
I believe there can be properly added to the above list questions such as "Was this second degree murder?" and "Was this suicide?"
In Chavanne by Chavanne v. Clover Financial Corp., 206 N.J. Super. 72 (App.Div. 1985), the court ruled that the severity of residual scarring on plaintiff's face should not have been the subject of opinion testimony by a physician where the facts of the injury could be appreciated by the jury's observation without the need for expert assistance.
Because we reach a result which is in conflict with State v. Perez, 218 N.J. Super. 478, 485 (App.Div. 1987),[2] we will comment briefly on the out-of-state cases relied upon for guidance by that court at page 484 of its opinion.
In State v. Avila, 166 Conn. 569, 353 A.2d 776 (1974), the Supreme Court of Connecticut approved expert testimony that the quantity of heroin found in defendant's possession could have been cut and repackaged into 22,400 glassine bags of a size suitable for street sale. The expert did not actually testify that defendant possessed for the purpose of distribution. This determination was left to the jury based on the circumstances surrounding possession, and the court concluded that the opinion testimony could be received as an aid to the jury.
In State v. Grayton, 163 Conn. 104, 302 A.2d 246 (1972), cert. den. 409 U.S. 1045, 93 S.Ct. 542, 34 L.Ed.2d 495 (1972), the *569 same court found no reversible error in the admission of testimony by a police lieutenant that a "half-load" of heroin "is a common quantity used in the trafficking of heroin, and that heroin is brought from the city of New York to Waterbury in units of that size." 302 A.2d 250. Again, the witness did not opine that defendant intended to distribute.
In State v. Olsen, 315 N.W.2d 1 (Iowa 1982), the witness did not testify that the seized marijuana was possessed for sale; the holding of that decision was only that he might "testify on the pattern or modus operandi of a certain offense and compare the facts of the case to it." Id. at 6-7.
The distinction is that, on the one hand, the witness is asked for an opinion based upon certain evidence as it relates to a well-defined modus operandi and on the other, an opinion on the guilt or innocence of the defendant. The former is proper; the latter is not. [Id., at 7.]
In Commonwealth v. Nichols, 4 Mass. App. 606, 356 N.E.2d 464, 468 (1976) the court found no error in receiving the opinion testimony of an experienced narcotics officer "to the effect that the size of the tinfoil containing traces of heroin which had been found in the defendant's apartment was an indication that the foil had once contained a large quantity of heroin." Here too, the court stopped short of admitting the witness's opinion that the defendant intended to distribute.
In State v. Keener, 110 Ariz. 462, 520 P.2d 510 (1974), a conviction was affirmed where a police officer testified that the quantity of drugs possessed by defendant indicated an intent to sell rather than for personal use. The court justified the testimony on the grounds that the officer had been properly qualified, that his testimony was subject to cross-examination and that the jury was free to reject his opinion.
Louisiana views the matter differently from Arizona. In State v. Montana, 421 So.2d 895, 899-900 (La. 1982), a police officer testified to an opinion that defendant had possessed the narcotics with intent to distribute. In reversing the conviction, the Supreme Court of Louisiana stated the following proposition:

*570 The jury may couple the knowledge gained from the experience of the officer with the characteristics exhibited by the defendant as established by the state at trial and make an inference as to the ultimate issue of the defendant's guilt. On the other hand, that inference as to the ultimate issue of defendant's guilt is for the jury and the jury alone.
Addressing the admissibility of such evidence in State v. Wheeler, 416 So.2d 78 (La. 1982), which Montana follows, the same court wrote:
This testimony was tantamount to an opinion that the defendant was guilty of the crime charged, an indirect, abstract inference as to the ultimate issue in the case. The officer was no more an expert than the jurors concerning the matters at issue in this case: the reliability of the arresting officers' observations that a man was engaged in passing out articles from a Schwegmann's shopping bag which he dumped in a trash can immediately before their approach; the officers' discovery of a substantial quantity of material later determined to be marijuana in individual containers inside the Schwegmann's bag; the officers' identity of the defendant as the same person who disposed of the Schwegmann's bag and was later arrested. Nor did the officer's expertise provide any assistance to the jury in reaching a decision. There is no necessity for this kind of evidence; to receive it merely tends to suggest that the jury may shift responsibility for decision to the witnesses.
* * * * * * * *
The officer's testimony was tantamount to an opinion that the defendant was guilty of distribution of marijuana. As the subject matter of the opinion approaches the hub of the issue, the risk of prejudice and hence of reversible error consequently increases. This is particularly so when the witness expressing the opinion is one, such as a police officer, in whom jurors and the public repose great confidence and trust. Under these circumstances, it is clear that a substantial right of the defendant has been violated, and that there is a reasonable possibility that the errors contributed to his conviction. [Id., at 81-82.]
See also Annotation, "Admissibility of expert testimony as to whether accused had specific intent necessary for conviction," 16 A.L.R. 4th 666 (1982); Annotation, "Admissibility of expert testimony as to criminal defendant's propensity toward sexual deviation," 42 A.L.R. 4th 937 (1985).
The federal counterpart to Evid.R. 56(3) is Fed.R.Evid. 704. Both rules are couched in identical language. As the Advisory Committee's Notes to the federal rule state, "The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions." Torres v. County of Oakland, 758 F.2d 147 (6th *571 Cir.1985), points out that the effect of the federal rule "is merely to remove the proscription against opinions on `ultimate issues' and to shift the focus to whether the testimony is `otherwise admissible.'" Id. at 150. (Emphasis ours). Evid. R. 56(2) specifies that an expert witness's opinion is admissible only "if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue." The accompanying note by the 1967 Rules of Evidence Commission observes that "[t]he key to all opinion testimony is that it must be helpful to the trier of fact without doing its job for it." Biunno, Current N.J. Rules of Evidence 468 (1988). If the opinion is not helpful to the jury it is not "otherwise admissible." This principle was part of our case law long before codification. Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 142 (1950).
An argument made in favor of allowing expert testimony as to defendant's intent is that the jury is free to reject it. But this is true of all unfairly prejudicial evidence and disregards the real harm which such testimony does. Although the witness is no better qualified than the jurors to translate the disparate proofs into terms of guilt or innocence, and although the jury need not believe him, the prejudicial impact of a policeman testifying to his belief in defendant's guilt cannot be underestimated. See State v. Landeros, 20 N.J. 69, 75 (1955). In United States v. Brown, 776 F.2d 397, 401 n. 6 (2nd Cir.1985), cert. den. 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986), the court made the following pertinent observations as to this aspect of the issue:
Whatever slight probative value arises from a narcotics expert's personal opinion that an observed transaction involved a sale of drugs must be carefully weighed against the distinct risk of prejudice. The "aura of special reliability and trustworthiness" surrounding expert testimony, which ought to caution its use, United States v. Fosher, 590 F.2d 381, 383 (1st Cir.1979); United States v. Amaral, 488 F.2d 1148, 1152 (9th Cir.1973), especially when offered by the prosecution in criminal cases, United States v. Green, 548 F.2d 1261, 1268 (6th Cir.1977), poses a special risk in a case of this sort. That risk arises because the jury may infer that the agent's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence *572 at trial. The risk is increased when the opinion is given by "the very officers who were in charge of the investigation," United States v. Sette, [334 F.2d 267, 269 (2nd Cir.1964)].
Applicable too is the text language on that same page urging federal district court judges to heed the Advisory Committee's Notes to Fed.R.Evid. 704 which state:
Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 [comparable to N.J.Evid.R. 4] provides for exclusion of evidence which wastes time [or threatens unfair prejudice]. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.
We also note the following admonition by Chief Justice Weintraub:
An expert witness should distinguish between what he knows as an expert and what he may believe as a layman. His role is to contribute the insight of his specialty. He is not an advocate; that is the role of counsel. Nor is he the ultimate trier of the facts; that is the role of the jury or the judge, as the case may be. The trier of the facts may be misled if the expert goes beyond what he can contribute as an expert. [In re Hyett, 61 N.J. 518, 531 (1972)].
In our view, the expert's opinion as to defendant's intent and consequent guilt of the crime charged lay outside his expertise and therefore could not have been legitimately helpful to the jury. Accordingly, it did not meet the requirement of Evid.R. 56(3) that it be "otherwise admissible." Moreover, since the probative value of the testimony was substantially outweighed by the risk that its admission would create a substantial danger of undue prejudice, the trial court should have exercised its discretion to exclude the challenged testimony pursuant to Evid.R. 4.
While the temptation is great to decide this matter so as to lighten the burden of law enforcement in suppressing the traffic in drugs, appellate courts must remember that their decisions leave a residue of principles which will be applied in a wide variety of cases. To sanction here the admissibility of an expert's opinion that defendant was guilty of intending to distribute would make it impossible to draw the line in other cases. The determination of whether to submit a civil or *573 criminal case to the hazards of jury determination would become too greatly controlled by the interpretation which an expert witness chooses to place on otherwise nondescript facts, and the role of comprehensible legal standards in the conduct of judicial proceedings would be dangerously diminished.
We conclude that the question of whether essential elements of a crime have been proved may not be the subject of opinion testimony and that the rationale for excluding such testimony is in keeping with legal principles consistently applied in New Jersey. The permissible role of the expert in a case such as this is to furnish information concerning the use of and traffic in controlled dangerous substances and to differentiate for the jury the distinctive indicia of intent to use and intent to distribute. In rendering assistance to the jury in a case such as this the expert witness may enlighten it, among other things, about the manner of packaging and processing for use or distribution, the significance of various quantities and concentrations of narcotics, the roles of various drug paraphernalia, characteristics of the drugs themselves, the import of circumstances surrounding possession, the conduct of the possessor and the manner in which drugs may be secreted or otherwise possessed for personal use or distribution. Whether the circumstances of a particular case establish an intent to use or to distribute must thereafter be left as a matter of argument by counsel.
In this case, the expert witness testified that crack is ordinarily ingested either through the use of a pipe, water pipe or with cigarettes or marijuana. He explained that its intoxicating effects may last anywhere from two to twenty minutes and that a single vial, having a retail value of about ten dollars, could be used intermittently over a period of four hours. He also testified that the lack of any smoking paraphernalia in defendant's apartment could be taken as an indication that *574 defendant was not a crack user.[3] These matters were properly the subject of expert knowledge. "A wide latitude in the admission of evidence is permitted, particularly when intent constitutes a material element of the offense charged, or when a so-called specific intent is involved." 1 Wharton's Criminal Evidence, § 168 at 308-309 (13 ed. 1972). But the witness's expertise, as we have said, did not extend to determining the truth of the charge laid in the indictment. In deciding that issue the jurors may consider expert knowledge only to the extent that it helps them interpret the raw factual data. The "line of distinction, while fine, is nevertheless essential." State v. Olsen, 315 N.W.2d at 7.
Reversed and remanded for a new trial.
R.S. COHEN, J.A.D., dissenting.
This is not an easy case. We know that opinion evidence on ultimate issues is admissible. We also know there is something disturbing about "expert" testimony on a matter like a criminal defendant's intent, a subject on which no one ordinarily has helpful expertise. Jurors, on the other hand, do not normally have the capacity to draw informed conclusions about a defendant's intent from proof of the amount or manner of possession of controlled dangerous substances. Tell jurors that a person has 2700 gallons of whiskey in barrels; they can readily conclude that the person intends to distribute to others. They know how much drinking that quantity entails, and they know people produce whiskey in barrels but buy it in bottles. Tell the same jurors that a person has two kilos of cocaine of a certain purity; without further explanation, most jurors will not appreciate the significance of the volume or form of the substance.
*575 This is a good setting for helpful expert testimony as to the form and manner in which cocaine is wholesaled and retailed, the usual purity and manner of packaging, and the amounts involved in ordinary retail transactions. Expert testimony pointing out how defendant's possession differs from the usual user or retail buyer can follow. The admissibility of such evidence is not really in doubt. I take it there is no serious objection to expert testimony, in response to a hypothetical question, asserting that persons holding so much cocaine at such and such a level of purity in such and such a package ordinarily hold the cocaine to distribute. It is the next step that is troublesome. That step is admitting testimony to the effect that, in the expert's view, this particular defendant had distribution in mind, because he possessed so great a quantity in a pre-retail form.
It does not seem to me so large a step. We permitted it to be taken, without objection at trial, in State v. Perez, 218 N.J. Super. 478 (App.Div. 1987). See also State v. Binns, 222 N.J. Super. 583, 592-593 (App.Div. 1988). It does not significantly change the thrust and meaning of the expert testimony or its impact on the jury.
I share the majority's concern that a defendant should not be convicted in reliance on a police expert's say-so which implies unrevealed further inculpatory knowledge. That can be dealt with by jury instructions and effective cross-examination. The present record does not suggest the eventuation of any such danger.
Trial courts have discretion under Evid.R. 4 to exclude testimony that, in the expert's opinion, defendant had a particular intent, or that a hypothetical person, obviously identical to defendant, had a particular intent. The discretion can be exercised where the danger appears that the jury may rely on the witness's say-so rather than on the bases the witness gives for the opinion. Drawing ultimate inferences from concededly legitimate expert testimony on CDS operations can be reserved *576 for summation. I see no capacity for harm, however, in what happened here or in State v. Perez or in every future case in which a State's witness may stray inadvertently over the line. I would not reverse this conviction.
NOTES
[1] "1967 Commission Note: This does not mean that the witness may merely give conclusions; it means that the testimony, if otherwise proper, is not objectionable because it embraces the ultimate issue. This is a matter of balance and emphasis. It is fundamental in scientific reasoning to avoid claiming more than can be proved; the jury should be left to draw the inferences. See State v. Vigliano, 50 N.J. 51 (1967) for an extreme example." Biunno, Current N.J. Rules of Evidence 468 (1988).
[2] Recently followed in State v. Binns, 222 N.J. Super. 583, 593 (App.Div. 1988).
[3] Defendant testified that he was a crack addict and that at the time of his arrest he had two pipes in a closet, but that these were not found by the arresting police.