229 N.J. Super. 215 (1988)
551 A.2d 170
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
OSMAN TORO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1988.
Decided December 5, 1988.
*217 Before Judges KING, BRODY and SKILLMAN.
Anthony A. Boyadjis, Designated Counsel, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney, Anthony A. Boyadjis, on the brief).
Ann Marie Luvera, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney; Ann Marie Luvera, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was indicted together with Jose Alberto Lotaro Mazo for possession of a controlled dangerous substance, cocaine, in violation of N.J.S.A. 24:21-20(a)(1); possession of a controlled dangerous substance with the intent to distribute, in violation of N.J.S.A. 24:21-19(a)(1), and conspiracy to possess a controlled dangerous substance with the intent to distribute, in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 24:21-24. Mazo absconded prior to trial and defendant was tried alone.
The State presented the following evidence at trial. Two State Police officers observed defendant's automobile weaving back and forth on Route 80 during the early morning hours of December 11, 1986. The officers also noticed that one of the vehicle's taillights was cracked. Consequently, they signaled the vehicle to the side of the road and asked defendant for his driver's license. Defendant was unable to produce a license. *218 The officers then observed a package wrapped with duct tape near defendant's feet which they suspected contained narcotics. At this point, the officers ordered defendant and his passenger, Mazo, out of the car and patted them down for weapons. Without administering Miranda warnings, one of the officers asked defendant what was in the package and his response was "coca." The officers then placed defendant and Mazo under arrest. As the officers placed handcuffs on Mazo, defendant said: "It's all my stuff. He doesn't have anything to do with it." However, defendant changed his story after he was brought to police headquarters and said: "It's both of ours." A laboratory analysis of the package disclosed that it contained 501 grams of 65.9% pure, free-base cocaine.
Defendant testified that he was a taxicab driver hired by Mazo to drive from New York City to Pennsylvania for $500. According to defendant, Mazo was carrying the package when he entered defendant's vehicle but did not disclose its contents until after the police apprehended them. Defendant also testified that, contrary to the police officer's testimony, Mazo placed the package by his own feet rather than by defendant's feet. Defendant stated that Mazo told him the package contained cocaine as the police were removing them from the car, and that he revealed this fact to the officers in response to their inquiry.
Based on this evidence, the jury found defendant guilty of possession of a controlled dangerous substance and possession with the intent to distribute but acquitted him on the charge of conspiracy to distribute. The trial judge merged the conviction for possession into the conviction for possession with the intent to distribute and sentenced defendant to life imprisonment. Defendant's subsequent motion for a reduction of sentence was denied.
On appeal defendant argues:
(1) His statements to the police regarding the contents and ownership of the package were the product of "custodial interrogation" conducted without Miranda warnings and therefore should not have been admitted into evidence.

*219 (2) The trial judge should have precluded the State from presenting the testimony of its expert witness because the State failed to disclose his name or the subject of his testimony before trial.
(3) The trial judge erred in permitting the State's expert to testify that a person in possession of the quantity and purity of the cocaine found in defendant's automobile would be involved in the distribution of cocaine.
(4) The life sentence imposed upon defendant was excessive.
We reject the first three arguments and affirm the judgment of conviction. However, we conclude that the sentence of life imprisonment imposed on defendant was excessive and therefore remand for resentencing.

I
Miranda warnings are required only when a person is subject to "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Police questioning under other circumstances does not involve "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467, 86 S.Ct. at 1624. Consequently, the police are not required to give Miranda warnings before conducting "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact finding process." 384 U.S. at 477, 86 S.Ct. at 1629; see generally LaFave & Israel, Criminal Procedure (1984), § 6.1 et seq.
In Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Court relied upon the exception to the requirements of Miranda for "general on-the-scene questioning" in holding that roadside questioning of a motorist incident to a routine traffic stop does not constitute "custodial interrogation." The Court rested its holding on two grounds. First, "a traffic stop is presumptively temporary and brief" and thus "questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." 468 U.S. at 437-438, 104 S.Ct. at 3149. Second, *220 "the typical traffic stop is public, at least to some degree," which "reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse." 468 U.S. at 438, 104 S.Ct. at 3149.
The Court in Berkemer also analogized the "usual traffic stop" to a "Terry stop":
In both of these respects, the usual traffic stop is more analogous to a so-called "Terry stop," see Terry v. Ohio, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968), than to a formal arrest. Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." United States v. Brignoni-Ponce, 422 U.S. 873, 881, 45 L.Ed.2d 607, 95 S.Ct. 2574 [2580] (1975). "[T]he stop and inquiry must be `reasonably related in scope to the justification for their initiation.'" Ibid. (quoting Terry v. Ohio, supra, [392 U.S.] at 29, 20 L.Ed.2d 889, 88 S.Ct. 1868 [at 1884].) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of Miranda. [468 U.S. at 439-440, 104 S.Ct. at 3150].
We read the foregoing passage to indicate that the police may conduct general on-the-scene questioning of a suspect, as authorized by Terry v. Ohio, without giving Miranda warnings. Only when "a suspect's freedom of action is curtailed to a `degree associated with formal arrest'" will "the safeguards prescribed by Miranda become applicable." Berkemer v. McCarty, 468 U.S. at 420, 104 S.Ct. at 3140, quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983); see also New York v. Quarles, 467 U.S. 649, 655, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550 (1984); LaFave & Israel, supra, § 6.6 (1988 supplement) at 69. This reading of Berkemer is supported by decisions in a number of other jurisdictions. See, e.g., United States v. Boden, 854 F.2d 983, *221 995 (7th Cir.1988); United States v. Quinn, 815 F.2d 153 (1st Cir.1987); United States v. Streifel, 781 F.2d 953 (1st Cir.1986); Casey v. State, 732 P.2d 885, 887-888 (Okl.Ct.App. 1987); People v. Bennett, 70 N.Y.2d 891, 524 N.Y.S.2d 378, 519 N.E.2d 289 (1987); State v. Marshall, 47 Wash. App. 322, 737 P.2d 265 (Ct.App. 1987).
We conclude based on this reading of Berkemer that defendant was not subject to "custodial interrogation" when he disclosed, without being given Miranda warnings, that the package found near his feet contained cocaine. The initial stop of defendant was a routine motor vehicle stop for suspected driving while under the influence. Hence, any questioning of defendant at this point would have been permissible under Berkemer. However, the stop became more than a routine motor vehicle stop when the police observed a package near defendant's feet which they suspected contained narcotics. The police then ordered defendant to get out of the automobile, patted him down for weapons and inquired about the contents of the package. At this point defendant's freedom of movement was restricted in a more substantial manner than in a routine motor vehicle stop. But his freedom of action was not "curtailed to a `degree associated with formal arrest.'" Berkemer v. McCarty, supra, 468 U.S. at 440, 104 S.Ct. at 3150, quoting California v. Beheler, supra, 463 U.S. at 1125, 103 S.Ct. at 3520. Defendant was not told that he was under arrest, he was not handcuffed and he was not subjected to any search beyond a patdown for weapons. Furthermore, defendant was detained only briefly before he was asked about the contents of the package, and the police questioning consisted of only a few, noncoercive questions. "Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest." Berkemer v. McCarty, supra, 468 U.S. at 442, 104 S.Ct. at 3152; see also State v. Sessions, 172 N.J. Super. 558, 562-563 (App.Div. 1980), certif. den. 85 N.J. 108 (1980). Rather, the officer's actions from the time they observed the suspicious package until defendant revealed that it contained *222 cocaine constituted a Terry "stop and inquiry" in order to "obtain information confirming or dispelling the officer's suspicions."[1]Berkemer v. McCarty, supra, 468 U.S. at 439, 104 S.Ct. at 3150; see also United States v. Sharp, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); State v. Davis, 104 N.J. 490 (1986); State v. Coburn, 221 N.J. Super. 586, 595-598 (App.Div. 1987), certif. den. 110 N.J. 300 (1988). Therefore, defendant was not in custody at the time he was asked about the contents of the package and his response that it contained "coca" was properly admitted into evidence.
Defendant's later statement that the cocaine belonged to him was made after he was placed under arrest. Consequently, he was entitled to receive Miranda warnings before being questioned. However, defendant claimed ownership of the cocaine as the officers placed handcuffs on Mazo without being asked any additional questions. Therefore, defendant's statement was not made in response to "interrogation" and the admission of evidence regarding that statement did not violate Miranda. See Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1966).

II
Upon the written request of a defendant, a prosecutor must disclose the name and address of any expert witness expected *223 to testify as well as the expert's report "or, if no report is prepared, a statement of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." R. 3:13-3(a)(11). If this information is not furnished, "the expert witness may, upon application by the defendant, be barred from testifying at trial." Ibid.
The prosecutor failed to notify defense counsel before trial that Sergeant Moscaritola, a member of the Morris County Prosecutor's Office involved in investigating organized narcotics activity, would be called to testify as an expert and failed to furnish a report by this witness. However, the trial judge concluded that even if defendant had been aware of Moscaritola's proposed testimony before trial, he could not have located an expert to testify that a person might possess more than a pound of cocaine with a purity of 65% solely for personal consumption. Therefore, the judge overruled defendant's objection to Moscaritola's testimony. In addition, to avoid any disadvantage to defendant in his cross-examination of Moscaritola due to the lack of an expert report, the judge required the witness to be examined outside the presence of the jury before testifying. The judge also indicated that he would allow defense counsel greater latitude than normal in cross-examination.
A trial court has broad discretion in determining what sanctions, if any, to impose when a party fails to comply with discovery obligations. See State v. Utsch, 184 N.J. Super. 575, 580 (App.Div. 1982); see also State v. Carter, 91 N.J. 86, 108-120 (1982). We find no abuse of discretion in this case. The trial judge correctly concluded that defendant probably could not have found an expert to dispute Moscaritola's testimony that the quantity and purity of the cocaine found in the package was indicative of commercial trafficking in the drug. Moreover, even if such testimony was available, defendant probably would not have offered it in order to avoid distracting the jury's *224 attention from his defense that the cocaine belonged to Mazo and that defendant was unaware of its presence in the car.

III
Defendant's argument that the trial judge erred in permitting Moscaritola to testify that possession of more than a pound of 65% pure, free-base cocaine would be for the purpose of distribution is based upon a recent decision of another panel of this court in State v. Odom, 225 N.J. Super. 564 (App.Div. 1988). The Odom court indicated that expert testimony could be presented regarding, among other things, "the manner of packaging and processing for use or distribution, the significance of various quantities and concentrations of narcotics, ... the import of circumstances surrounding possession, the conduct of the possessor and the manner in which drugs may be secreted or otherwise possessed for personal use or distribution," 225 N.J. Super. at 573, but that an expert should not be permitted to express an opinion that the defendant possessed drugs with the intent to distribute. The Odom court also noted that its analysis was in conflict with the decisions of other panels of this court in State v. Binns, 222 N.J. Super. 583, 592-593 (App.Div. 1988), certif. den. 111 N.J. 624 (1988) and State v. Perez, 218 N.J. Super. 478 (App.Div. 1987). 225 N.J. Super. at 568.
Assuming the correctness of Odom, we are satisfied that there is a difference between the expert opinion given in Odom and the opinions expressed by Moscaritola. In Odom, the prosecutor asked:
Do you have an opinion whether those 18 vials of crack [possessed by defendant] were possessed for personal use or for the purpose of distributing them?
The expert responded that the purpose of defendant's possession was for distribution. In contrast, Moscaritola was not directly asked to express an opinion regarding the purpose of defendant's possession of the package of cocaine. Rather, the testimony of Moscaritola on which defendant bases his argument reads as follows:

*225 Q. An individual in possession of that amount of cocaine [501 grams of 65% pure free base] based on your expertise, ... could you give an opinion as to what his purpose might be in possessing such a quantity?
A. It's my opinion that anyone being in possession of this much at that percentage would be in the business of distribution of cocaine.
Although this testimony by Moscaritola was unquestionably based on the facts of the present case, he stopped short of expressing an expert opinion that defendant intended to distribute cocaine. Instead, his testimony may be viewed, in the words of Odom, as no more than an expert opinion as to "the significance of various quantities and concentrations of narcotics." 225 N.J. Super. at 573. Therefore, we find no abuse of discretion in its admission.
Furthermore, even if Moscaritola's testimony went beyond the subtle line drawn in Odom between admissible and inadmissible expert opinion testimony regarding the distribution of narcotics, the error would be harmless because the testimony objected to by defendant added nothing of substance to the rest of Moscaritola's testimony.

IV
It is the responsibility of an appellate court to review a sentence to determine whether (1) the sentencing guidelines were violated, (2) the aggravating and mitigating factors were based upon competent credible evidence in the record, and (3) the sentence is so clearly unreasonable as to shock the judicial conscience. State v. Sainz, 107 N.J. 283, 292 (1987); State v. Roth, 95 N.J. 334, 364-365 (1984). Because sentences imposed under Title 24 are completely open-ended, with no minimum or presumptive terms, the proper identification of aggravating and mitigating factors is especially important "`[i]n order to reduce unacceptable disparity' in sentencing." State v. Sainz, supra, 107 N.J. at 289, quoting State v. Sainz, 210 N.J. Super. 17, 24 (App.Div. 1986).
In sentencing defendant to life imprisonment, the trial judge identified four statutory aggravating factors:

*226 1. The nature and circumstances of the offense, and the role defendant played in it, N.J.S.A. 2C:44-1a(1),
2. The risk that defendant will commit another offense, N.J.S.A. 2C:44-1a(3),
3. The likelihood that defendant was involved in organized criminal activity, N.J.S.A. 2C:44-1a(5), and
4. The need for deterring [the defendant] and others from violating the law, N.J.S.A. 2C:44-1a(9).
The trial judge identified only one mitigating factor:
Defendant has no history of prior delinquency or criminal activity before the commission of the present offense. N.J.S.A. 2C:44-1b(7).
With respect to the balance of aggravating and mitigating factors the trial judge stated:
In this particular case more than any case I have ever sentenced, the aggravating factors crush, destroy and obliterate the one mitigating factor, because the type of activity involved here and society's need to deter other people from doing this and from engaging in this activity and whatever limited effect the Court can have on attacking this organized criminal activity are so important in this case that the mitigating circumstance is a speck on a sky as far as I'm concerned, it is nothing in this particular case.
We conclude that the trial judge improperly identified one aggravating factor and failed to identify one applicable mitigating factor. We are also convinced that under all the circumstances the life sentence imposed upon defendant was excessive.
Defendant was 20 years old and had no prior record of criminal activity at the time of this offense. He had been employed as a taxicab driver for 2 1/2 years and was earning between $250 and $300 per week, most of which he gave to his mother for household expenses.
The trial judge properly identified the nature and circumstances of the offense as an aggravating factor. We agree that the "nature and circumstances" of a drug offense include the amount of drugs involved. Under Title 24, one ounce or more of a schedule I or schedule II drug, including 3.5 ounces pure, free-base, is the threshold amount required to impose sentence under N.J.S.A. 24:21-19b(2), which permits a sentence of "imprisonment for up to life." Defendant was in possession of 1.1 pounds of cocaine, including 330 grams of free-base *227 which, as noted by the trial court, is "almost a hundred times higher" than the threshold amount required for sentencing under N.J.S.A. 24:21-19b(2).
The trial judge also properly identified the likelihood that defendant was involved in organized criminal activity as an aggravating factor. As noted by the trial judge, most cocaine is grown in Central America and the importation, processing and distribution of the drug in this country involves an elaborate criminal network. The amount of cocaine found in defendant's possession provides ample support for the trial judge's finding that defendant was a participant in that organized distribution network. See State v. Pych, 213 N.J. Super. 446, 463 (App.Div. 1986).
In addition, the amount of cocaine found in defendant's possession, and the potential profit to be derived from its distribution, justify the trial judge's finding that the need for deterrence is an aggravating factor pertinent to defendant's sentencing. See State v. Martelli, 201 N.J. Super. 378, 385 (App.Div. 1985).
However, the trial judge improperly identified the likelihood that defendant would commit another offense as an aggravating factor. The fact that defendant had been gainfully employed for over two years, had no prior criminal record and was a respected member of his community militate against this conclusion. Furthermore, neither the trial record nor the presentence report indicate that defendant was involved in the distribution of drugs on more than one occasion. In fact, the trial judge acknowledged at one point during sentencing that "it may very well be that this particular defendant would not commit another offense."
Furthermore, the trial judge erred in failing to identify as a mitigating factor that defendant was a youthful offender whose conduct "was substantially influenced by another person more mature than the defendant." N.J.S.A. 2C:44-1b(13). At the time of the offense, defendant was only 20 years old whereas *228 his companion, Mazo, was over 30. Moreover, the prosecutor indicated that Mazo appeared to be the dominant participant in the criminal activity:
I firmly believe that [defendant] was involved, but I'll be fair and I'll say that I believe that he wasn't the principal, I certainly believe that Masso [sic] was the principal.
My office has information that Masso [sic] has connections out of Miami, Florida, and Colombia. We still haven't tracked him down....
In our view, the trial judge should have accepted the prosecutor's representations regarding Mazo's apparent dominant role in the distribution of the cocaine and treated that circumstance as a mitigating factor in sentencing defendant.
The proper identification and weighing of the applicable aggravating and mitigating sentencing factors leads to the conclusion that the sentence which the trial judge imposed upon defendant was excessive. Although the trial judge properly viewed the substantial amount of drugs involved in this crime as a significant factor in imposing sentence, defendant's lack of a prior criminal record and his apparent subordinate role in the crime also should have been viewed as significant factors. Therefore, we vacate sentence to life imprisonment and remand for resentencing.
In addition, since defendant must be resentenced, we conclude that he should be given the option of being resentenced under the Comprehensive Drug Reform Act of 1987, N.J.S.A. 2C:35-1 et seq. N.J.S.A. 2C:35-5b(1) now provides in relevant part that a person who possesses more than 3.5 grams of pure free-base cocaine
is guilty of a crime of the first degree. The defendant shall, except as provided in N.J.S. 2C:35-12, be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, during which the defendant shall be ineligible for parole.
N.J.S.A. 2C:35-23c(2) provides:
In any case pending or initiated after the effective date of this act involving an offense defined herein and committed prior to such date:
* * * * * * * *

*229 (2) The court, with the consent of the defendant, may impose sentence under the provisions of this chapter applicable to the offense and the offender.
Defendant's crime and his trial both occurred before the effective date of the 1987 Act. However, he was not sentenced until after the 1987 Act became effective. Therefore, his case was still "pending" when the 1987 Act became effective, see State v. Molnar, 81 N.J. 475, 488 (1980), and he was eligible to be sentenced under N.J.S.A. 2C:35-5b(1).
We recognize that defendant did not originally ask to be sentenced under N.J.S.A. 2C:35-5b(1). However, the sentencing provisions of the 1987 Act were enacted partly to remedy the recognized inadequacies of the sentencing provisions of Title 24, which provided "inadequate sentencing guidelines with which consistently to identify the most serious offenders and offenses and to guard against sentencing disparity." N.J.S.A. 2C:35-1.1d. Therefore, the sentencing provisions of the 1987 Act should be liberally applied in sentencing persons convicted of crimes committed before its effective date. Cf. State v. Bey, 112 N.J. 45 (1988). Accordingly, defendant should now be given the option to be resentenced under N.J.S.A. 2C:35-5b(1).[2]
The judgment of conviction is affirmed but the life sentence imposed upon defendant is vacated and the case is remanded for resentencing in conformity with the views expressed in part IV of this opinion.
NOTES
[1] Defendant's brief asserts that the troopers "knew" even before they asked defendant about the contents of the package that it contained narcotics. However, a careful reading of the troopers' entire testimony reveals that they had no more than a strong suspicion that the package contained narcotics until defendant told them it contained cocaine. In any event, the strength of the police's suspicions regarding the contents of the package is not determinative of whether defendant's "freedom of action" was "curtailed to a `degree associated with formal arrest.'" Berkemer v. McCarty, supra, 468 U.S. at 440, 104 S.Ct. at 3150. "A policemen's unarticulated plan [to place a suspect under arrest] has no bearing on the question whether a suspect was `in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." 468 U.S. at 442, 104 S.Ct. at 3151.
[2] We note that the prosecutor recommended that defendant be sentenced to the presumptive term for a first degree offense, which is fifteen years, and that the court "should strongly consider" imposing a period of parole ineligibility of at least one-third of that term. Under the 1987 Act, the fifteen year term recommended by the prosecutor is the presumptive term for the crime which defendant stands convicted of committing and a period of parole ineligibility of one-third of that term is now mandatory. N.J.S.A. 2C:35-5b(1). Thus, if defendant elects on remand to be sentenced under N.J.S.A. 2C:35-5b(1), the trial judge may impose the sentence originally recommended by the prosecutor, including a five-year period of parole ineligibility. See State v. McMeekin, 204 N.J. Super. 496, 506-508 (App.Div. 1985), certif. den. 102 N.J. 302 (1985).